**Parker BENSON, Plaintiff,**

v.

**Salvador GODINEZ, et al., Defendants.**

**No. 94 C 2861.**

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 24, 1996.

Parker Benson, Stateville Correctional Center, Joliet, IL, Pro Se.

Thomas Lee Ciecko, Illinois Attorney General's Office, Chicago, IL, Susan Takata O'Leary, Illinois Department of Corrections, Chicago, IL, for Defendants.

## *MEMORANDUM OPINION AND ORDER*

ASPEN, Chief Judge:

Plaintiff Parker Benson, acting *pro se*, brings this complaint under 42 U.S.C. § 1983 against Salvador Godinez, the former Warden of the Stateville Correctional Center ("Stateville"), and Theopolis Smith, a Superintendent of Unit H at Stateville. Benson maintains that the conditions of his confinement in Unit H fell below the standards set by the Eighth Amendment to the United States Constitution.[1] The defendants now move for summary judgment, and for the reasons set forth below their motion is granted.

### I. Background

Plaintiff was housed in the protective custody unit of Stateville, Unit H, from late 1992 until sometime in 1994. He contends in his amended complaint that from November 1992 to April 1993, his assigned cell was not heated properly, causing him to suffer stiffness, head and chest colds, sore throats, headaches, and mental pain and suffering. Amended Complaint ¶¶ 12–17. He also asserts that the lack of adequate ventilation in the wing exposed him to foul smelling air, as well as various communicable diseases such as tuberculosis and the Acquired Immunodeficiency Syndrome ("AIDS"). *Id.* ¶¶ 46–53. He claims to have personally showed Defendant Smith the problematic conditions in his cell, and to have sent a letter detailing the situation to former Warden Godinez, and because they failed to remedy the situation he brings the instant lawsuit against each defendant "individually and in his personal capacity." *Id.* ¶¶ 5–6.

We previously denied the defendants' motion to dismiss the complaint, finding the allegations sufficient to state a claim of deliberate indifference to Benson's serious medical needs. The defendants subsequently deposed the plaintiff, and the transcript of that deposition has placed Benson's allegations in greater focus.[2] Initially, we observe that the plaintiff did not write either the original or the amended complaint himself; rather, another inmate named Anthony Dixon drafted the documents and read them to Benson before the plaintiff signed them. Pl.'s Dep. at 25–27. We therefore base our factual discussion of the case on the statements made by Benson in his deposition, and discount any unexplained affidavit statements to the contrary. *Sirvidas v. Commonwealth Edison Co.*, 60 F.3d 375, 379 (7th Cir.1995).

Plaintiff's cell in Unit H was approximately 10 feet by 8 feet, with a window that measured 2 feet by 2.5 feet and could be opened. Pl.'s Dep. at 32. Although the cell door was solid, it contained a "chuckhole" approximately the size of a shoebox that could be opened. *Id.* at 33. The plaintiff does not know what the temperature of his cell was during the winter months of 1992–93, but he claims that ice formed on the window of his cell and cold air blew threw cracks in the walls. *Id.* at 31–32, 47. However, he admits that the window was neither open to the outside nor broken. *Id.* at 45. The staff at Stateville issued to Benson several pairs of shirts, pants, socks, underwear, and thermal underwear, as well as a pair of gloves, two hats, two jackets, and two pairs of boots. *Id.* at 19–22. The plaintiff contends that due to the cold weather he often went to bed fully clothed. *Id.* at 40. He was also given two blankets during the period of time that his cell was cold. *Id.* at 38–39, 71. Although other inmates had portable space heaters in their cells, Benson never requested one. *Id.* at 42. The only physical injuries Benson suffered because of the temperatures were headaches, sore throats, stiffness, and colds, *id.* at 24–25, 42, 53–56, and he admits that he did not sustain frostbite, *id.* at 70. The plaintiff did not file an internal prison grievance about the temperature in his cell. *Id.*

---

1. Technically, the protection of the Eighth Amendment is applicable to the States only through the Fourteenth Amendment. Nonetheless, for simplicity we refer to Benson's claims as being brought under the Eighth Amendment.

2. We shall refer to portions of the plaintiff's deposition, which is submitted as Appendix 1 to the defendants' motion for summary judgment, as "Pl.'s Dep. at ——."

at 36. With regard to his claim of exposure to tuberculosis and AIDS, Benson concedes that he has not contracted either ailment. *Id.* at 58–59.

Benson told Defendant Smith about the temperature in his cell, but Smith said he could not do anything about the heating and simply gave each inmate an extra blanket. *Id.* at 70–71. The plaintiff also wrote a letter to Defendant Godinez complaining that the heat was not working in his cell, but the former warden never visited his cell or responded to his letter. *Id.* at 35, 71–72.

## II. Summary Judgment Standard

▆ A motion for summary judgment will be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of identifying "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed. R.Civ.P. 56(c)). This burden may be satisfied by either presenting specific evidence on a material issue, or by pointing out "an absence of evidence to support the nonmoving party's case." *Celotex Corp.,* 477 U.S. at 325, 106 S.Ct. at 2554. Once the moving party has met its burden, the non-moving party cannot simply rest on the allegations in the pleadings; rather, the non-movant "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *see Smith v. Shawnee Library Sys.,* 60 F.3d 317, 320 (7th Cir.1995). While we view the facts in a light most favorable to the non-moving party, *Cuddington v. Northern Ind. Public Serv. Corp.,* 33 F.3d 813, 815 (7th Cir.1994), we will not permit conclusory allegations by the non-movant to defeat a properly supported motion for summary judgment, *Smith,* 60 F.3d at 320.

## III. Discussion

▆ Although the Eighth Amendment prohibits the infliction of "cruel and unusual punishment," the conditions of a prisoner's confinement in a state facility will implicate this provision of the Constitution only if two prerequisites are met. *Farmer v. Brennan,* —— U.S. ——, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994). First, the complained of conditions must be objectively serious enough for us to conclude that the inmate has been "deprived of the 'minimal civilized measure of life's necessities.'" *Lunsford v. Bennett,* 17 F.3d 1574, 1579 (7th Cir.1994) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981)). Second, the prison official named in the action must act with the requisite state of mind—that is, with "deliberate indifference" to the inmate's health or safety. *Wilson v. Seiter,* 501 U.S. 294, 302–03, 111 S.Ct. 2321, 2326–27, 115 L.Ed.2d 271 (1991). With regard to the former requirement, we observe that not all unpleasant conditions of confinement will satisfy the objective component: "To the extent such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes,* 452 U.S. at 347, 101 S.Ct. at 2399. With regard to the second prong of the analysis, liability will be appropriate only if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference." *Farmer,* 114 S.Ct. at 1979.

▆ In the instant case both defendants move for summary judgment, arguing that Benson has not presented sufficient evidence on either the objective or subjective components of this test. Because we agree with the first proposition—that Benson's cell conditions were not objectively serious enough to violate the Eighth Amendment— we need not examine the second. The plaintiff's primary claim is that his cell was too cold during the winter months. To be sure, prison officials are required to provide adequate heat to inmates. *Del Raine v. Williford,* 32 F.3d 1024, 1035–36 (7th Cir.1994);

*Henderson v. DeRobertis,* 940 F.2d 1055, 1059 (7th Cir.1991), *cert. denied,* 503 U.S. 966, 112 S.Ct. 1578, 118 L.Ed.2d 220 (1992). However, cold temperatures alone do not usually result in a constitutional violation. Rather, "[s]ome conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets." *Wilson,* 501 U.S. at 304, 111 S.Ct. at 2327. Thus, even if inmates are kept in cold cells, so long as they are supplied with adequate protection from the elements, their confinement will not violate the Constitution. *Dixon v. Godinez,* No. 93 C 5151, 1995 WL 42229, at *3 (N.D.Ill. February 1, 1995). Here, Benson admits that he was issued socks, shirts, pants, gloves, hats, jackets, and boots. He was also provided with two blankets to combat the cold weather, and the chuckhole in his door allowed the inflow of warm air into his cell. While an inmate need not wait until he suffers hypothermia or frostbite to challenge his confinement, *Del Raine,* 32 F.3d at 1035, the absence of any ailment other than colds or sore throats militates against characterizing the conditions in Benson's cell as objectively serious. Finally, there is no indication that the inadequate heating, combined with other unsavory conditions in the cell, created an intolerable situation for Benson. *Cf. Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir.1992) (in addition to inadequate heating, inmate also complained of broken windows, dirty bedding, unfit drinking water, worms, roaches, rodents, and leaky plumbing).

■ Similarly, Benson's claim of inadequate ventilation does not rise to the level of a constitutional violation. His cell contains a window and a chuckhole, both of which could be opened to control air flow. There is no evidence that the air in his cell was somehow unsanitary. As compared to other cases that have found inadequate ventilation problems to be constitutionally serious, *e.g., Ramos v. Lamm,* 639 F.2d 559, 569 (10th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981), the plaintiff in the instant matter had some control over his environment and did not endure a situation of sufficient seriousness to implicate the Eighth Amendment. *See Dixon,* 1995 WL 42229, at *2.

We do not condone the housing of prisoners in these conditions. Claims of inadequate heating and ventilation should be taken seriously by prison administrators and the public bodies that oversee them. However, based on the evidence submitted by Benson and the defendants, we cannot conclude that the conditions in the plaintiff's cell in Unit H were so egregious as to constitute cruel and unusual punishment.[3]

#### IV. Conclusion

For the reasons set forth above, the defendants' motion for summary judgment is granted. It is so ordered.

---

3. While we do not reach the issue of the defendants' subjective intent, we note that the evidence raises serious doubts as to whether Smith or Godinez could have rectified the situation in Unit H any further. *See Wrice v. Godinez,* No. 94 C 3427, 1996 WL 6563, at *2–3 (N.D.Ill. Jan. 5, 1996); *Jackson,* 955 F.2d at 22 ("If the harm is remote rather than immediate, or the officials don't know anything about it *or can't do anything about it,* the subjective component is not established and the suit fails.") (emphasis added).