**Stephen M. SCHEXNAYDER, M.D., Appellant,**

v.

**Shantrece DANIELS, Individually and as Representative of the Estate of Journee Daniels, Appellee.**

No. 06–05–00117–CV.

Court of Appeals of Texas, Texarkana.

Submitted Jan. 25, 2006.

Decided Feb. 23, 2006.

Kristi I. McCasland, Greer, McCasland & Miller, LLP, Texarkana, for appellant.

William A. Newman, Morgan & Weisbrod, LLP, Dallas, for appellee.

Before MORRISS, C.J., ROSS and CARTER, JJ.

## OPINION

Opinion by Justice ROSS.

Stephen M. Schexnayder, M.D., a resident of Arkansas, has filed an interlocutory appeal from an order denying his special appearance in a medical malpractice lawsuit in which he contested the jurisdiction of the Texas court over him. The suit was filed against him by Shantrece Daniels, in her individual capacity, and as representative of the estate of her deceased daughter, Journee Daniels. Schexnayder attempts to avoid jurisdiction

based on an alleged lack of minimum contacts with Texas.

## Background

The lawsuit is based on events leading to Journee's death June 11, 2003. Journee, age two, was hospitalized at Wadley Regional Medical Center in Texarkana, Texas, June 10, 2003, in serious condition. On June 11, Wadley contacted Arkansas Children's Hospital (ACH) in Little Rock, and Schexnayder, who was the intensive care unit's attending physician at that time, approved the transfer on behalf of ACH. ACH was to provide transportation of the child to Little Rock. A transport team was dispatched to Texarkana which included two ACH employees and one resident physician, Barrett Lewis, M.D. Schexnayder did not personally go to Texarkana.

The ACH team arrived at Wadley and took over Journee's care in an attempt to stabilize her adequately for transport. In this process, the team apprised Schexnayder by telephone of Journee's condition and Schexnayder directed the care to be given. There evidently was a problem with the child's oxygen tube, her oxygen levels were low, and the ACH team attempted to insert different tubes (in sequence) in an attempt to avoid air leakage. It appears the team ultimately intubated the child successfully, but Journee (who had already coded and been resuscitated at least once) again coded, and resuscitation efforts were unsuccessful. It was Schexnayder who ultimately made the decision that further resuscitation efforts would be futile. Journee died at Wadley.

## Standard of Review

A nonresident defendant challenging personal jurisdiction through a special appearance carries the burden of negating all bases of personal jurisdiction. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex.2002). Whether a court has personal jurisdiction over a defendant is a question of law. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 805–06 (Tex.2002) (citing *Marchand*, 83 S.W.3d at 794). In resolving this question of law, a trial court must frequently resolve questions of fact. *Coleman*, 83 S.W.3d at 806 (citing *Marchand*, 83 S.W.3d at 794). Our courts of appeals may review the fact-findings for both legal and factual sufficiency. *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex.1996). We review de novo the trial court's legal conclusions. *Marchand*, 83 S.W.3d at 794; *E.L.M. LeBlanc v. Kyle*, 28 S.W.3d 99, 101 (Tex. App.-Texarkana 2000, pet. denied). Where the record contains no findings of fact and conclusions of law (as in this case), we must imply all findings of fact necessary to support the trial court's findings that are supported by the evidence. *Marchand*, 83 S.W.3d at 795.

In this case, Schexnayder contends the evidence clearly demonstrates he is not subject to jurisdiction. There is no specific argument directed at either legal or factual sufficiency as such—the argument is that the evidence concerning his connection to the medical care and treatment of the patient (with which Schexnayder does not disagree or controvert), does not meet the legal standard for imposing the jurisdiction of Texas courts.

## Scope of Personal Jurisdiction

The Texas long-arm statute permits courts to exercise personal jurisdiction over a nonresident defendant, limited by the federal constitutional requirements of due process. *Marchand*, 83 S.W.3d at 795; *U–Anchor Adver., Inc. v. Burt*, 553 S.W.2d 760, 762 (Tex.1977). The general rubric applicable to personal jurisdiction states that this limitation is not exceeded when (1) the defendant has established minimum contacts with Texas, and (2) the exercise of jurisdiction comports with the traditional notions of fair play and sub-

stantial justice. *Marchand,* 83 S.W.3d at 795 (citing *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)).

■ The purpose of the minimum contacts analysis is to protect the defendant from being haled into court when its relationship with Texas is too attenuated to support jurisdiction. *Coleman,* 83 S.W.3d at 806; *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990). Minimum contacts may not be shown through the unilateral acts of a third party; nor may random, fortuitous, or attenuated contacts with Texas provide the sole justification to exercise personal jurisdiction. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.,* 815 S.W.2d 223, 226 (Tex.1991). However, as the United States Supreme Court further explained in *Rudzewicz:*

> where the defendant "deliberately" has engaged in significant activities within a State, or has created "continuing obligations" between himself and residents of the forum, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.

471 U.S. at 475–76, 105 S.Ct. 2174 (citations omitted); *see also HMS Aviation v. Layale Enters., S.A.,* 149 S.W.3d 182, 191 (Tex.App.-Fort Worth 2004, no pet.).

■ As the cases have developed, there are two variations within the bounds of personal jurisdiction. Personal jurisdiction exists if the nonresident defendant's minimum contacts give rise to either specific or general jurisdiction. *Marchand,* 83 S.W.3d at 795; *Guardian Royal Exch. Assurance, Ltd.,* 815 S.W.2d at 226.

■ Specific jurisdiction exists when the defendant's liability arises from or is related to an activity conducted within the forum. *Marchand,* 83 S.W.3d at 796 (citing *Guardian Royal Exch. Assurance, Ltd.,* 815 S.W.2d at 228). For a court to exercise specific jurisdiction over a nonresident defendant, two requirements must be met: (1) the defendant's contacts with the forum must be purposeful, and (2) the cause of action must arise from or relate to those contacts. *Coleman,* 83 S.W.3d at 807.

■ General jurisdiction exists when the defendant's contacts with Texas "are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state." *Marchand,* 83 S.W.3d at 796. This is described as being a more demanding minimum-contacts analysis than specific jurisdiction. *Coleman,* 83 S.W.3d at 807. Thus, general jurisdiction allows a forum to exercise jurisdiction over a defendant even if the cause of action did not arise from or relate to a defendant's contacts with the forum. *Id.; Guardian Royal Exch. Assurance, Ltd.,* 815 S.W.2d at 228. Those contacts should be such as to justify categorizing the defendant as a resident of this State. Thus, one suggested method of determining whether general jurisdiction over a defendant truly lies in Texas is by determining whether a citizen of another state, on a claim for wrongdoing in another state, could nevertheless properly sue the defendant in Texas courts. *See* Charles Rhodes, *The Predictability Principle in Personal Jurisdiction Doctrine: A Case Study on the Effects of a "Generally" too Broad, but "Specifically" too Narrow Ap-*

proach to Minimum Contacts, 57 BAYLOR L.REV. 135, 149–55 (2005).

Under either formulation, minimum contacts are required to justify the application of the concept. One description of the purpose of the minimum-contacts analysis in the context of purposeful acts is to prevent a foreign corporation from being haled into Texas courts when its relationship to Texas is so remote that it could not reasonably anticipate having to defend itself in a Texas court. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Hitachi Shin Din Cable, Ltd. v. Cain*, 106 S.W.3d 776, 782 (Tex.App.-Texarkana 2003, no pet.).

**Evidence of Minimum Contacts**

Schexnayder provided evidence that he is a salaried employee of the University of Arkansas Center for Medical Sciences and is on staff at ACH. He provided evidence that he is not a Texas resident, owns no property in Texas, was not and has never been licensed to practice medicine in Texas, does not operate an office in Texas, has no staff privileges in any Texas hospital, and has never personally advertised his services or recruited patients in Texas. Schexnayder acknowledges he was contacted in three telephone conversations, all originating in Texas and totaling about an hour in length, from individuals caring for Journee. He points out that he did not initiate the calls, but acknowledges that the conversations were all directly connected with Journee's care. Daniels presented evidence that the telephone conversations involved a discussion about the condition of the patient, and deposition testimony that Schexnayder, as an active participant with the team, took over as her attending physician and became directly engaged in her care. We have reviewed the audio recordings of the conversations. It is apparent that, in this emergency situation, Lewis was not merely asking Schexnayder for advice and then determining whether to follow it, but that Schexnayder was directing the team in its care of Journee.

Lewis called Schexnayder after he arrived at the hospital and explained the child's apparent problems, then followed Schexnayder's orders about procedures to be followed. After Journee coded, Lewis called again, and (except for one break when the connection failed) Schexnayder stayed on the telephone with Lewis from then until Journee was eventually pronounced dead. During this process, Schexnayder gave Lewis detailed instructions on treating and medicating Journee, including multiple dosages of epinephrine and the administration of needle decompression on her chest, all of which directions were promptly followed by Lewis. Schexnayder ultimately made the decision that further efforts to save the child would be futile.

This evidence is largely uncontroverted. The parties agree about the sequence of events and about the actions that occurred. What they disagree on, and the problem we face, is the legal impact of that evidence. Thus, our review of the order is de novo, based on all the evidence before the Court.

**Analysis**

*Specific Jurisdiction*

Schexnayder contends the evidence is insufficient to support a finding of specific jurisdiction and cites *Brocail v. Anderson, M.D.*, 132 S.W.3d 552 (Tex.App.-Houston [14th Dist.] 2004, no pet.). In *Brocail*, a doctor performed surgery on a professional baseball player in Michigan, prescribed therapy for him, and after his patient moved to Texas, continued to monitor his progress and to prescribe therapy. Brocail, the patient baseball player, sued in

Texas, but the court found that there was nothing about Texas involved at the time of the surgery (which was the alleged tort) and that Brocail's later move to Texas, even with continuing contact with the doctor, was not sufficient to create even a tenuous relationship with this forum. The court reasoned that the continuance of the relationship in Texas was as a result of Brocail's actions, not the doctor's.

As noted below, the facts in the instant case are distinguishable from *Brocail.* Further, they do not match those set out in any Texas decision. The closest case appears to be *Mason v. Shelby Co. Health Care Corp.,* 919 F.Supp. 235 (S.D.Miss. 1996), a federal district court decision, also cited by Schexnayder. In *Mason,* the question was whether a Tennessee emergency room physician had adequate contacts to justify specific jurisdiction. An automobile accident occurred in Mississippi, and on request by the Mississippi hospital, the Tennessee hospital sent a team by helicopter to pick up the patient. The Tennessee physician did not travel, but talked by telephone to medical personnel at the Mississippi hospital about the impending transport. He also talked by telephone to the transport team while the patient was being transported. The patient died in the air (allegedly from medication), and a lawsuit followed. Although the plaintiff argued that the Tennessee physician had directed the use of the drug that allegedly was a cause of the death, the federal court noted that it had before it transcripts of every telephone conversation, and that such transcripts did not show that the doctor advised or participated in the decision to administer the drug to the patient. On those facts, the federal court dismissed the case, concluding that the telephone calls were insufficient to satisfy the minimum-contacts requirement. Based on this evidence, the federal court applied the third-party concept and concluded the doctor should not be subjected to jurisdiction in Mississippi because of the unilateral activity of others.

■ There is one substantive difference between that case and the present one: the extent of the physically absent physician's involvement with the team on site in providing medical care for the patient. Based on the record in the instant case, we necessarily conclude that Schexnayder was not merely providing advice to the team, but that he fully participated in the care given by the team to this child and did, in fact, make the most important decisions concerning her care. He was not a mere bystander, but was effectively there with the team in all but body. That team was sent from Little Rock to Texas to take over the full medical care for this child, and Schexnayder was a part of that team. Had he been physically present in Texas, jurisdiction would not be an issue. He acknowledges that the other team members who were physically present do not contest jurisdiction of the Texas court over them. There is no logical reason why the team leader, although not physically present in Texas, but who headed up the medical treatment by telephone from Arkansas, should not likewise be subject to jurisdiction in Texas. The evidence indicates that, from the time the team instituted stabilizing procedures on the child until her ultimate demise, all at Wadley hospital in Texas, the team was in complete control of her care and treatment. The child was the patient of the team during that time, and as a fully participating member of that team, Schexnayder was, except for not being physically present, as involved as any of its other members.

Schexnayder contends that, because he was present only by telephone calls initiated from Texas, he was not adequately present at this event. We disagree. Un-

der some circumstances, as in the situation discussed in *Michiana*, a telephone call may be nothing more than a mere contact with another person. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777 (Tex.2005). The facts of the instant case reflect much more than a mere contact, or more than a request for advice or consultation. If the evidence showed that Schexnayder was only providing advice as a consultant to a doctor in Texas, an entirely different situation would exist—and one more directly in line with the facts and analysis in *Mason*. Minimum contacts exist here because Schexnayder was actively practicing medicine in Texas by directing the actions of his hospital's team while it was in Texas. That contact was an intentional consummation of an agreement to care for Journee in the State of Texas. The contact was therefore purposeful—not accidental or fortuitous—and Daniels' claims arise from that contact.

▮ As described by the United States Supreme Court, a nonresident defendant that has "purposefully availed" itself of the privileges and benefits of conducting business in the foreign jurisdiction has sufficient contacts with the forum to confer personal jurisdiction. *Rudzewicz*, 471 U.S. at 474–76, 105 S.Ct. 2174 (discussing constitutional boundaries of personal jurisdiction); *see Marchand*, 83 S.W.3d at 795. A nonresident defendant that purposefully has availed itself of the privileges and benefits of conducting business in Texas has sufficient contacts to allow Texas courts to exercise personal jurisdiction over the nonresident. *Marchand*, 83 S.W.3d at 795.

▮ Although not determinative, foreseeability is a consideration in deciding whether the nonresident defendant has purposefully established "minimum contacts" with the forum state. *Id.; Guardian Royal Exch. Assurance, Ltd.*, 815 S.W.2d at 227. Under the specific facts of this case, where Schexnayder directed the details of Journee's care and treatment in Texas, albeit by telephone calls initiated from Texas to him in Arkansas, and the patient died during such care and treatment, Schexnayder could have reasonably anticipated having to defend himself in a Texas court. Under this evidence, we conclude that constitutionally adequate minimum contacts existed. However, even though there are contacts with Texas, and even though they reach the minimum necessary to justify exercise of jurisdiction by Texas courts, the additional question is whether doing so under these facts is outside the range of what could be considered "fair play and substantial justice." *Guardian Royal Exch. Assurance, Ltd.*, 815 S.W.2d at 226; *Rudzewicz*, 471 U.S. at 475–76, 105 S.Ct. 2174.

▮ Once it has been determined that the nonresident defendant purposefully established minimum contacts with the forum state, we then evaluate the contacts in light of other factors to determine whether the assertion of personal jurisdiction comports with fair play and substantial justice. *Guardian Royal Exch. Assurance, Ltd.*, 815 S.W.2d at 228. These factors include (1) the burden on the defendant, (2) the interests of the forum state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id.* (quoting *World–Wide Volkswagen Corp.*, 444 U.S. at 292, 100 S.Ct. 559; *Rudzewicz*, 471 U.S. at 477, 105 S.Ct. 2174; *PHC–Minden, L.P. v. Kimberly–Clark Corp.*, No. 12–04–00259–CV, —— S.W.3d ——, ——, 2005 WL 1979102, at *3 (Tex.App.-Tyler Aug.17, 2005, pet. filed) (not designated for publication)). In that

portion of the inquiry, it is the defendant's job to present "a compelling case that the presence of some consideration would render jurisdiction unreasonable." *Rudzewicz,* 471 U.S. at 477, 105 S.Ct. 2174; *Guardian Royal Exch. Assurance, Ltd.,* 815 S.W.2d at 231. Even if the nonresident defendant has purposefully established minimum contacts with the forum state, the exercise of jurisdiction may not be fair and reasonable under the facts in a particular case. *Rudzewicz,* 471 U.S. at 479, 105 S.Ct. 2174; *Guardian Royal Exch. Assurance, Ltd.,* 815 S.W.2d at 231.

■ Applying the named factors, we recognize there would be some burden on Schexnayder for having to defend himself in a lawsuit 150 miles away from his home, in another state. However, we also recognize that distance is not so important a factor now as it has been historically. Also, because Schexnayder is licensed in Arkansas, not in Texas, it would appear that, in connection with a medical malpractice claim, his state of residence would have more interest in the dispute than would Texas. However, because Journee was a Texas resident, this State has an inherent interest in protecting its citizens and providing them with a remedy for alleged tortious injuries inflicted on them within this State. Daniels also has an inherent interest in pursuing the lawsuit locally rather than being required to travel the 150 miles to pursue her interests—perhaps under a different set of laws than those of her resident state. The factor of efficiency does not appear to be an issue in any respect.

The final factor involves the shared interest of the states in furthering fundamental substantive social policies. That concept is implicated in this case. There is a fundamental notion that the citizens of each state should be able to access knowledge and specialized expertise and seek assistance across state lines without unnecessary hindrance. Competing against that is the notion that an injured party should be able to seek recompense—in the state of the party's residence where the event occurred—for damages allegedly caused by the negligent behavior of another.

In this case, except for geographic considerations, there is no suggested reason why the case should be brought in Arkansas rather than Texas. Based on evidence that Schexnayder was the one who approved Journee's transfer to ACH and was actively involved with the transport team in treating her as a patient in this State, we conclude the contacts involving Schexnayder were not so attenuated as to violate concepts of due process.

Although we recognize the bright-line attraction of looking solely to the place where the calls originated as determining whether jurisdiction lies in Texas, that simplistic formula is not persuasive. *Compare Mason,* 919 F.Supp. 235, with *Thompson v. Chrysler Motors Corp.,* 755 F.2d 1162, 1171 (5th Cir.1985), and *Brown v. Flowers Indus., Inc.,* 688 F.2d 328, 333 (5th Cir.1982). Other factors necessarily explain the nature of telephone conversations, and the question of whether the resident of one state first called another should not control in all situations.

We conclude that, under this evidence and under the application of the law to that evidence as set out above, Schexnayder's contacts with Texas were sufficient in this particular instance to meet the requirements of due process and allow the litigation to proceed in this State. We emphasize, however, that this ruling is limited to these facts, and should not automatically be expanded to dissimilar situations. It is critical to our analysis that the team in this case was from Schexnayder's own hospital and that it was working to-

gether on a person who had been accepted as a patient of that hospital.

### General Jurisdiction

As previously set out, determining whether general jurisdiction exists requires a more stringent level of analysis than specific jurisdiction. General jurisdiction exists when the contacts are continuous and systematic so that the forum may exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *Marchand,* 83 S.W.3d at 796; *Coleman,* 83 S.W.3d at 807.

In this case, there is no evidence that Schexnayder did business on a regular basis in Texas. Schexnayder has never advertised his services in Texas, but his services are advertised in the websites of ACH and the University of Arkansas for Medical Sciences, along with his job description as critical care section chief, certifications, background, and contact information. Daniels also points out that the hospitals advertise that they provide helicopter transport throughout Arkansas and the region for critically ill and injured infants and children to their specialized facility. There was also evidence that Schexnayder had received patients from Texas hospitals about seven times in the months around Journee's death and that he had assisted with the care of patients by telephone conference numerous times.

Daniels did not allege that jurisdiction exists because Schexnayder maintained an office, warehouse space, a mailing address, a telephone listing, subscribed to an answering service, or had or has any other direct business location in Texas. *Cf. Michel v. Rocket Eng'r Corp.,* 45 S.W.3d 658, 666–72 (Tex.App.-Fort Worth 2001, no pet.) (first inquiry in general jurisdiction analysis is whether nonresident business has created "general business presence" in forum state).

■■■■ We do not find the testimony that Schexnayder talked on the telephone with doctors in Texas, even assisting those doctors in treatment of their patients, establishes either a continuous or systematic presence in the State of such a nature as to justify treating him as a person who might be haled into court in Texas. Thus, general jurisdiction does not lie on these facts. The remaining question is whether that evidence, together with evidence about the ACH and University of Arkansas for Medical Sciences websites, might combine to show such a presence.

■■■■ We review the evidence related to the websites to determine whether it is sufficient to support the implied findings of specific and general jurisdiction by the trial court. "Internet use is characterized as falling within three categories on a sliding scale for purposes of establishing personal jurisdiction." *Michel,* 45 S.W.3d at 677 (citing *Jones v. Beech Aircraft Corp.,* 995 S.W.2d 767, 772 (Tex.App.-San Antonio 1999, pet. dism'd w.o.j.)). At one end of the scale are websites clearly used for transacting business over the internet, such as entering into contracts and knowing and repeated transmission of files of information, which may be sufficient to establish minimum contacts with a state. *Michel,* 45 S.W.3d at 677. On the other end of the spectrum are "passive" websites that are used only for advertising over the internet and are not sufficient to establish minimum contacts, even though they are accessible to residents of a particular state. *Id.* In the middle are "interactive" websites that allow the "exchange" of information between a potential customer and a host computer. *Id.* Jurisdiction in cases involving interactive websites is determined by the degree of interaction. *Id.; I & JC Corp. v. Helen of Troy L.P.,* 164 S.W.3d 877, 889 (Tex.App.-El Paso 2005,

pet. denied). Texas courts (including this one) have used this test in determining whether an internet site is sufficient to support the exercise of general jurisdiction over a defendant.[1]

 In this case, the evidence shows that Schexnayder's biography, credentials, and job description were all set out on the ACH website. The main thrust of the website is informational in nature—which would necessarily lead to the potential for use of ACH for its specialized purpose. The evidence shows that it was possible to interact via e-mail with the site, that physicians could register for continuing medical education on the site, and that individuals could apply online for jobs. The evidence does not indicate that doctors interacted on patient care online. Even if we ascribed all of the actions on the website to Schexnayder, this level of connectivity simply does not rise to the level or purpose of interaction that would justify finding that Schexnayder had submitted himself to the jurisdiction of Texas courts. The evidence does not reach the higher level necessary to justify a finding that the minimum contacts necessary to support a finding that the website, either alone or in combination with the other evidence subjected him to the general jurisdiction of the court.

## Conclusion

Because we find the evidence of minimum contacts is sufficient to support a finding of specific jurisdiction, we affirm the judgment.

---

1. *See Townsend v. Univ. Hosp.-Univ. of Colo.,* 83 S.W.3d 913, 922 (Tex.App.-Texarkana 2002, pet. denied); *Experimental Aircraft Ass'n v. Doctor,* 76 S.W.3d 496, 506–07 (Tex. App.-Houston [14th Dist.] 2002, no pet.); *Gessmann v. Stephens,* 51 S.W.3d 329, 338–39 (Tex.App.-Tyler 2001, no pet.); *Michel,* 45 S.W.3d at 677–78; *Riviera Operating Corp. v. Dawson,* 29 S.W.3d 905, 911 (Tex.App.-Beaumont 2000, pet. denied); *Daimler–Benz Aktiengesellschaft v. Olson,* 21 S.W.3d 707, 725 (Tex.App.-Austin 2000, pet. dism'd w.o.j.).