**Opinion filed November 10, 2011**



In The

# Eleventh Court of Appeals

_____

## No. 11-10-00366-CV
_____

## BENMAC'S ARROWHEADS DOT COM, LLC, JOHN McCURDY, AND JIM BENNETT, Appellants

### V.

## SAM WILLIAMS, Appellee

On Appeal from the 91st District Court

Eastland County, Texas

Trial Court Cause No. CV-10-41982

### O P I N I O N

Sam Williams sued BenMac's Arrowheads Dot Com, LLC, John McCurdy, and Jim Bennett for breach of contract. BenMac's, McCurdy, and Bennett filed a special appearance, which the trial court overruled. BenMac's, McCurdy, and Bennett appeal the trial court's interlocutory order and assert in a single issue that the trial court erred when it overruled the special appearance. We affirm the judgment of the trial court.

Sam Williams, an Eastland, Texas, resident, started the business Arrowheads Dot Com in Eastland, Texas. Williams contracted in Eastland with Eastland Internet/TXOL to purchase the

domain name "arrowheads.com," set up the server space it required, and build the website. Over the next several years, Williams developed the site and continued to purchase web hosting services in Eastland.

In 2005, Williams sold Arrowheads Dot Com to Karl Kilguss, a nonresident. Prior to the sale, Kilguss traveled to Eastland to learn about the business from Williams and his father. The purchase agreement executed by Williams and Kilguss provided that the closing of the transaction was to take place in Rhode Island and contained a choice of law provision, which provided that the agreement would be governed by and in accordance with the laws of Rhode Island. The agreement also reserved to Williams a five percent interest in the company and obligated the company to continue to provide, without cost to Williams, two banner ads.

In 2008, Kilguss sold the Rhode Island registered company to appellants, BenMac's Arrowheads Dot Com, LLC, John McCurdy, and Jim Bennett. Both McCurdy and Bennett are nonresidents, and BenMac's Arrowheads Dot Com, LLC is an Ohio limited liability company with its principal place of business in Ohio. The purchase agreement executed by appellants and Kilguss provided that the closing of the transaction was to take place in Ohio. It also contained a choice of venue provision, providing that the venue for disputes arising out of the agreement or related to the transaction would be Ohio and would be governed by Ohio law.

In the underlying action, Williams sued appellants for breach of contract based on Williams's allegations that appellants failed to honor its obligations to Williams that arose under the contract between Williams and Kilguss.

In addition to subject-matter jurisdiction, the court must have personal jurisdiction over a party to issue a binding judgment. *CSR Ltd. v. Link*, 925 S.W.2d 591, 594 (Tex. 1996). "[P]ersonal jurisdiction concerns the court's power to bind a particular person or party." *Id.* The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.041–.045 (West 2008); *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex. 2002). When the plaintiff meets this burden, the burden shifts to the nonresident defendant to negate all possible grounds for personal jurisdiction. *BMC Software*, 83 S.W.3d at 793; *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 203 (Tex. 1985). The existence of personal jurisdiction is a question of law that must sometimes be preceded by the resolution of underlying factual disputes. *Preussag Aktiengesellschaft v. Coleman*, 16 S.W.3d 110, 113 (Tex.

App.—Houston [1st Dist.] 2000, pet. dism'd w.o.j.). In considering an order granting or denying a special appearance, we may review a trial court's findings on disputed factual issues for both legal and factual sufficiency. *BMC Software*, 83 S.W.3d at 794. However, when the underlying facts are undisputed or otherwise established, we conduct a de novo review of the trial court's order as a question of law. *Id.*; *El Puerto de Liverpool, S.A. de C.V. v. Servi Mundo Llantero S.A. de C.V.*, 82 S.W.3d 622, 628 (Tex. App.—Corpus Christi 2002, pet. dism'd w.o.j.); *Goodenbour v. Goodenbour*, 64 S.W.3d 69, 75 (Tex. App.—Austin 2001, pet. denied); *Preussag Aktiengesellschaft*, 16 S.W.3d at 113. In any event, in conducting its review, an appellate court considers all of the evidence in the record. *El Puerto*, 82 S.W.3d at 628. Here, we have only been provided the clerk's record. The appellate record does not include a reporter's record from the hearing on the special appearance. The trial court's order does not state a basis for the court's ruling, and there were no findings of fact or conclusions of law issued.

A Texas court may assert personal jurisdiction over a nonresident defendant only if the requirements of both the Due Process Clause of the Fourteenth Amendment to the United States Constitution and the Texas long-arm statute are satisfied. *CSR Ltd.*, 925 S.W.2d at 594. The Texas long-arm statute gives Texas courts the power to exercise personal jurisdiction over a nonresident defendant who does business in Texas. Section 17.042. The statute provides a list of activities that constitute doing business in Texas; however, the list is not exhaustive. The broad language of the statute reaches "as far as the federal constitutional requirements of due process will allow." *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991).

Personal jurisdiction over nonresident defendants is constitutional when two conditions are met: (1) the defendant has established minimum contacts with the forum state and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *BMC Software*, 83 S.W.3d at 795 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The minimum-contacts analysis requires that a defendant "purposely avail" itself of the privilege of conducting activities within Texas, thus invoking the benefits and protections of our laws. *Id.* (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). The "touchstone" of due process analysis is "purposeful availment." *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 784 (Tex. 2005). There are three parts to a "purposeful availment" inquiry:

(1) only the defendant's contacts with the forum are relevant; (2) the contacts relied upon must be purposeful rather than random, fortuitous, or attenuated; and (3) the defendant must have sought some benefit, advantage, or profit by availing itself of jurisdiction. *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 575 (Tex. 2007).

The defendant's activities, whether they consist of direct acts within Texas or conduct outside Texas, must justify a conclusion that the defendant could reasonably anticipate being haled into a Texas court. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex. 2002) (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Jurisdiction is premised on notions of implied consent that, by invoking the benefits and protections of a forum's laws, a nonresident consents to suit there. *Michiana*, 168 S.W.3d at 785. The quality and nature of the defendant's contacts with the forum state, rather than their number, are important in analyzing minimum contacts. *Guardian Royal*, 815 S.W.2d at 230 n.11.

A defendant's contacts with a forum state can give rise to either general or specific jurisdiction. *BMC Software*, 83 S.W.3d at 795–96; *Guardian Royal*, 815 S.W.2d at 227–28. General jurisdiction is present when a defendant's contacts are continuous and systematic, permitting the forum to exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to the activities conducted within the forum. *CSR Ltd.*, 925 S.W.2d at 595. General jurisdiction requires a showing that the defendant conducted substantial activities within the forum, a more demanding minimum-contacts analysis than for specific jurisdiction. *Id.*

Specific jurisdiction is present when the cause of action arises from or is related to the defendant's contacts with the forum state. *Id.*; *Guardian Royal*, 815 S.W.2d at 227. When specific jurisdiction is asserted, the minimum-contacts analysis focuses on the relationship among the defendant, the forum, and the litigation. *Guardian Royal*, 815 S.W.2d at 228. Specific jurisdiction is established if the defendant's alleged liability arises out of or is related to an activity conducted within the forum state. *Moki Mac*, 221 S.W.3d at 575–76.

As mentioned, the touchstone of the due process analysis is "purposeful availment." Minimum contacts are sufficient to establish personal jurisdiction only if appellants purposefully availed themselves of the privilege and benefits of conducting activities within Texas. Only their contacts are relevant; their contacts must have been purposeful, rather than random, fortuitous, or

4

attenuated; and their contacts must demonstrate that they sought some benefit, advantage, or profit in availing themselves of the jurisdiction of Texas. *Id.* at 575; *Michiana*, 168 S.W.3d at 784–85.

In support of his response to appellants' special appearance, Williams attached a sworn affidavit he completed. In the affidavit, Williams describes Arrowheads Dot Com as a "nationwide business which advertises and solicits business from all 50 states." It "markets and sells advertising banners and web space to [a]rtifact dealers and vendors nationwide." He contends that appellants solicit business from all fifty states and that the website is used heavily by Texas advertisers. Specifically, Williams explains that the website continues to be heavily used by Texas advertisers and that, currently, twelve of the fifty-three banners listed on the dealer page are for Texas companies. In the affidavit in support of appellants' special appearance, the affiant for appellants only notes that the website "is a passive website used only for advertising and information" and that appellants "have no contacts with the State of Texas."

Appellants argue that, in determining whether minimum contacts exist based on their website, this court must analyze the degree of interaction of the website. Citing *All Star Enterprise, Inc. v. Buchanan*, 298 S.W.3d 404 (Tex. App.—Houston [14th Dist.] 2009, no pet.), and *Schexnayder v. Daniels*, 187 S.W.3d 238 (Tex. App.—Texarkana 2006, pet. dism'd w.o.j.), appellants contend that "courts must consider three categories on internet activity: (1) [w]ebsites used for transacting business; (2) [p]assive websites used *only* for advertising; and (3) [i]nteractive websites that allow for the exchange of information." Appellants argue that their website is passive and, therefore, that it is not sufficient to establish minimum contacts with Texas even though the website is accessible in Texas.

It is not necessary for us to determine the category of interactivity into which the website falls. The cases relied on by appellants deal with facts where the websites were arguably used to establish contacts with Texas by advertising for the companies that were defendants in the suits. Here, we are not determining whether, through the website itself, appellants established sufficient contacts with Texas but, rather, whether the website is evidence of sufficient contacts between appellants and the Texas advertisers that would provide the continuous and systematic contacts necessary to establish personal jurisdiction in Texas. As noted above, Williams demonstrated that over twenty percent of the companies that obtain advertising space on the dealer page of the website from appellants do so for the purpose of advertising their businesses in

5

Texas. We hold that this evidence, which appellants did not dispute or negate, is sufficient to establish that appellants purposefully availed themselves of all the benefits, advantages, and profits that Texas had to offer and that appellants have maintained continuous and systematic contacts with Texas necessary for general jurisdiction. Moreover, although there is nothing in the record before us to indicate how the advertisers came to be customers of appellants, we will infer that the trial court found that appellants solicited the Texas advertisers. *See BMC Software*, 83 S.W.3d at 795 ("When a trial court does not issue findings of fact and conclusions of law with its special appearance ruling, all facts necessary to support the judgment and supported by the evidence are implied.").

Because we have determined that Williams provided sufficient evidence to demonstrate that general jurisdiction exists and the clerk's record does not demonstrate that appellants met their burden to negate general jurisdiction, we need not reach a determination concerning specific jurisdiction.

Concerning the due process requirement that the exercise of personal jurisdiction comport with traditional notions of fair play and substantial justice, the burden is on the defendant to "present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Guardian Royal*, 815 S.W.2d at 231 (quoting *Burger King*, 471 U.S. at 477). In making this determination, we consider (1) "the burden on the defendant," (2) "the interests of the forum state in adjudicating the dispute," (3) "the plaintiff's interest in obtaining convenient and effective relief," (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and (5) "the shared interest of the several states in furthering fundamental substantive social policies." *Id.* "Only in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts." *Id.* Here, appellants only aver that "[t]he assumption of jurisdiction by the court over [appellants] would offend traditional notions of fair play and substantial justice, depriving [them] of due process as guaranteed by the Constitution of the United States." The State of Texas has an obvious interest in providing a forum for resolving disputes involving its citizens. *Lewis v. Indian Springs Land Corp.*, 175 S.W.3d 906, 919 (Tex. App.—Dallas 2005, no pet.). Appellants have failed to meet the burden of putting forth evidence that would render jurisdiction unreasonable.

We hold that appellants failed to negate general jurisdiction.  Accordingly, we overrule appellants' sole issue and affirm the trial court's order overruling the special appearance.


JIM R. WRIGHT

CHIEF JUSTICE


November 10, 2011

Panel consists of:  Wright, C.J.,
McCall, J., and Kalenak, J.