Opinion filed November 10,
2011

 

                                                                       In The

                                                                              

  Eleventh
Court of Appeals

                                                                   __________

 

                                                         No. 11-10-00366-CV 

                                                    __________

 

                      BENMAC’S
ARROWHEADS DOT COM, LLC,

                  JOHN McCURDY,
AND JIM BENNETT, Appellants

 

                                                             V.

 

                                       SAM
WILLIAMS, Appellee



 

                                    On
Appeal from the 91st District Court

 

                                                          Eastland
County, Texas

 

                                               Trial
Court Cause No. CV-10-41982

 



 

O P I N I O N

            Sam
Williams sued BenMac’s Arrowheads Dot Com, LLC, John McCurdy, and Jim Bennett
for breach of contract.  BenMac’s, McCurdy, and Bennett filed a special
appearance, which the trial court overruled.  BenMac’s, McCurdy, and Bennett appeal
the trial court’s interlocutory order and assert in a single issue that the
trial court erred when it overruled the special appearance.  We affirm the
judgment of the trial court.  

            Sam
Williams, an Eastland, Texas, resident, started the business Arrowheads Dot Com
in Eastland, Texas.  Williams contracted in Eastland with Eastland
Internet/TXOL to purchase the domain name “arrowheads.com,” set up the server
space it required, and build the website.  Over the next several years,
Williams developed the site and continued to purchase web hosting services in
Eastland.

            In
2005, Williams sold Arrowheads Dot Com to Karl Kilguss, a nonresident.  Prior
to the sale, Kilguss traveled to Eastland to learn about the business from
Williams and his father.  The purchase agreement executed by Williams and
Kilguss provided that the closing of the transaction was to take place in Rhode
Island and contained a choice of law provision, which provided that the
agreement would be governed by and in accordance with the laws of Rhode
Island.  The agreement also reserved to Williams a five percent interest in the
company and obligated the company to continue to provide, without cost to Williams,
two banner ads.

            In
2008, Kilguss sold the Rhode Island registered company to appellants, BenMac’s
Arrowheads Dot Com, LLC, John McCurdy, and Jim Bennett.  Both McCurdy and
Bennett are nonresidents, and BenMac’s Arrowheads Dot Com, LLC is an Ohio
limited liability company with its principal place of business in Ohio.  The
purchase agreement executed by appellants and Kilguss provided that the closing
of the transaction was to take place in Ohio.  It also contained a choice of
venue provision, providing that the venue for disputes arising out of the
agreement or related to the transaction would be Ohio and would be governed by
Ohio law.

            In
the underlying action, Williams sued appellants for breach of contract based on
Williams’s allegations that appellants failed to honor its obligations to
Williams that arose under the contract between Williams and Kilguss.

In addition to subject-matter
jurisdiction, the court must have personal jurisdiction over a party to issue a
binding judgment.  CSR Ltd. v. Link, 925 S.W.2d 591, 594 (Tex. 1996). 
“[P]ersonal jurisdiction concerns the court’s power to bind a particular person
or party.”  Id.  The plaintiff bears the initial burden of pleading
sufficient allegations to bring a nonresident defendant within the provisions
of the Texas long-arm statute.  Tex.
Civ. Prac. & Rem. Code Ann. §§ 17.041–.045 (West 2008); BMC
Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 793 (Tex. 2002).  When
the plaintiff meets this burden, the burden shifts to the nonresident defendant
to negate all possible grounds for personal jurisdiction.  BMC Software,
83 S.W.3d at 793; Kawasaki Steel Corp. v. Middleton, 699 S.W.2d 199, 203
(Tex. 1985).  The existence of personal jurisdiction is a question of law that
must sometimes be preceded by the resolution of underlying factual disputes.  Preussag
Aktiengesellschaft v. Coleman, 16 S.W.3d 110, 113 (Tex. App.—Houston [1st
Dist.] 2000, pet. dism’d w.o.j.).  In considering an order granting or denying a special appearance, we may review a trial court’s findings
on disputed factual issues for both legal and factual sufficiency.  BMC
Software, 83 S.W.3d at 794.  However, when the underlying facts are undisputed
or otherwise established, we conduct a de novo review of the trial court’s
order as a question of law.  Id.; El Puerto de Liverpool, S.A. de
C.V. v. Servi Mundo Llantero S.A. de C.V., 82 S.W.3d 622, 628 (Tex. App.—Corpus
Christi 2002, pet. dism’d w.o.j.); Goodenbour v. Goodenbour, 64 S.W.3d
69, 75 (Tex. App.—Austin 2001, pet. denied); Preussag Aktiengesellschaft,
16 S.W.3d at 113.  In any event, in conducting its review, an appellate court
considers all of the evidence in the record.  El Puerto, 82 S.W.3d at
628.  Here, we have only been provided the clerk’s record.  The appellate
record does not include a reporter’s record from the hearing on the special
appearance.  The trial court’s order does not state a basis for the court’s
ruling, and there were no findings of fact or conclusions of law issued.

            A
Texas court may assert personal jurisdiction over a nonresident defendant only
if the requirements of both the Due Process Clause of the Fourteenth Amendment
to the United States Constitution and the Texas long-arm statute are satisfied.
 CSR Ltd., 925 S.W.2d at 594.  The
Texas long-arm statute gives Texas courts the power to exercise personal
jurisdiction over a nonresident defendant who does business in Texas.  Section 17.042. 
The statute provides a list of activities that constitute doing business in
Texas; however, the list is not exhaustive.  The broad language of the statute reaches
“as far as the federal constitutional requirements of due process will allow.” 
Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C., 815
S.W.2d 223, 226 (Tex. 1991).

            Personal jurisdiction over nonresident
defendants is constitutional when two conditions are met: (1) the defendant has
established minimum contacts with the forum state and (2) the exercise of
jurisdiction comports with traditional notions of fair play and substantial
justice.  BMC Software, 83 S.W.3d at 795 (citing Int’l Shoe
Co. v. Washington, 326 U.S. 310, 316  (1945)).

         The minimum-contacts
analysis requires that a defendant “purposely avail” itself of the privilege of
conducting activities within Texas, thus invoking the benefits and protections
of our laws.  Id. (citing Burger King Corp. v. Rudzewicz,
471 U.S. 462, 475 (1985)).  The “touchstone” of due
process analysis is “purposeful availment.”  Michiana Easy Livin’
Country, Inc. v. Holten, 168 S.W.3d 777, 784 (Tex. 2005).  There are three parts to a “purposeful availment”
inquiry: (1) only the defendant’s contacts with the forum are relevant;
(2) the contacts relied upon must be purposeful rather than random, fortuitous,
or attenuated; and (3) the defendant must have sought some benefit, advantage,
or profit by availing itself of jurisdiction.  Moki Mac River
Expeditions v. Drugg, 221 S.W.3d 569, 575 (Tex. 2007).

         The defendant’s
activities, whether they consist of direct acts within Texas or conduct outside
Texas, must justify a conclusion that the defendant could reasonably anticipate
being haled into a Texas court.  Am. Type Culture Collection, Inc. v.
Coleman, 83 S.W.3d 801, 806 (Tex. 2002) (citing World-Wide Volkswagen
Corp. v. Woodson, 444 U.S. 286, 297 (1980)).  Jurisdiction
is premised on notions of implied consent that, by invoking the benefits and
protections of a forum’s laws, a nonresident consents to suit there.  Michiana,
168 S.W.3d at 785.  The quality and nature of the
defendant’s contacts with the forum state, rather than their number, are
important in analyzing minimum contacts.  Guardian Royal, 815
S.W.2d at 230 n.11.

         A defendant’s contacts
with a forum state can give rise to either general or specific jurisdiction.  BMC
Software, 83 S.W.3d at 795–96; Guardian Royal, 815 S.W.2d at 227–28.  General jurisdiction is present when a defendant’s
contacts are continuous and systematic, permitting the forum to exercise
personal jurisdiction over the defendant even if the cause of action did not
arise from or relate to the activities conducted within the forum.  CSR
Ltd., 925 S.W.2d at 595.  General jurisdiction
requires a showing that the defendant conducted substantial activities within
the forum, a more demanding minimum-contacts analysis than for specific
jurisdiction.  Id.

            Specific
jurisdiction is present when the cause of action arises from or is related to
the defendant’s contacts with the forum state.  Id.; Guardian
Royal, 815 S.W.2d at 227.  When specific
jurisdiction is asserted, the minimum-contacts analysis focuses on the
relationship among the defendant, the forum, and the litigation.  Guardian
Royal, 815 S.W.2d at 228.  Spe-cific jurisdiction
is established if the defendant’s alleged liability arises out of or is related
to an activity conducted within the forum state.  Moki Mac, 221
S.W.3d at 575–76.

            As mentioned, the touchstone of the due process
analysis is “purposeful availment.”  Minimum contacts are sufficient to
establish personal jurisdiction only if appellants purposefully availed themselves
of the privilege and benefits of conducting activities within Texas.  Only
their contacts are relevant; their contacts must have been purposeful, rather
than random, fortuitous, or attenuated; and their contacts must demonstrate
that they sought some benefit, advantage, or profit in availing themselves of
the jurisdiction of Texas.  Id. at 575; Michiana, 168
S.W.3d at 784–85.

            In
support of his response to appellants’ special appearance, Williams attached a
sworn affidavit he completed.  In the affidavit, Williams describes Arrowheads
Dot Com as a “nationwide business which advertises and solicits business from
all 50 states.”  It “markets and sells advertising banners and web space to
[a]rtifact dealers and vendors nationwide.”  He contends that appellants
solicit business from all fifty states and that the website is used heavily by
Texas advertisers.  Specifically, Williams explains that the website continues
to be heavily used by Texas advertisers and that, currently, twelve of the
fifty-three banners listed on the dealer page are for Texas companies.  In the
affidavit in support of appellants’ special appearance, the affiant for
appellants only notes that the website “is a passive website used only for
advertising and information” and that appellants “have no contacts with the
State of Texas.”

            Appellants
argue that, in determining whether minimum contacts exist based on their
website, this court must analyze the degree of interaction of the website. 
Citing All Star Enterprise, Inc. v. Buchanan, 298 S.W.3d 404 (Tex.
App.—Houston [14th Dist.] 2009, no pet.), and Schexnayder v. Daniels,
187 S.W.3d 238 (Tex. App.—Texarkana 2006, pet. dism’d w.o.j.), appellants
contend that “courts must consider three categories on internet activity:  (1)
[w]ebsites used for transacting business; (2) [p]assive websites used only
for advertising; and (3) [i]nteractive websites that allow for the exchange of
information.”  Appellants argue that their website is passive and, therefore, that
it is not sufficient to establish minimum contacts with Texas even though the website
is accessible in Texas.

            It
is not necessary for us to determine the category of interactivity into which
the website falls.  The cases relied on by appellants deal with facts where the
websites were arguably used to establish contacts with Texas by advertising for
the companies that were defendants in the suits.  Here, we are not determining
whether, through the website itself, appellants established sufficient contacts
with Texas but, rather, whether the website is evidence of sufficient contacts
between appellants and the Texas advertisers that would provide the continuous
and systematic contacts necessary to establish personal jurisdiction in Texas. 
As noted above, Williams demonstrated that over twenty percent of the companies
that obtain advertising space on the dealer page of the website from appellants
do so for the purpose of advertising their businesses in Texas.  We hold that
this evidence, which appellants did not dispute or negate, is sufficient to
establish that appellants purposefully availed themselves of all the
benefits, advantages, and profits that Texas had to offer and that appellants have maintained continuous and systematic
contacts with Texas necessary for general jurisdiction.  Moreover, although
there is nothing in the record before us to indicate how the advertisers came
to be customers of appellants, we will infer that the trial court found that
appellants solicited the Texas advertisers.  See BMC Software, 83 S.W.3d
at 795 (“When a trial court does not issue findings of fact and conclusions of
law with its special appearance ruling, all facts necessary to support the
judgment and supported by the evidence are implied.”).

            Because we have determined that Williams provided sufficient evidence to demonstrate that general jurisdiction exists and the clerk’s record
does not demonstrate that appellants met their burden to negate general jurisdiction,
we need not reach a determination concerning specific jurisdiction.

            Concerning the due process requirement
that the exercise of personal jurisdiction comport with traditional notions of
fair play and substantial justice, the burden is on the defendant to
“present ‘a compelling case that the presence of some consideration would
render jurisdiction unreasonable.’”  Guardian Royal, 815 S.W.2d at 231
(quoting Burger King, 471 U.S.  at 477).  In making this determination,
we consider (1) “the burden on the defendant,” (2) “the interests of the forum
state in adjudicating the dispute,” (3) “the plaintiff's interest in obtaining
convenient and effective relief,” (4) “the interstate judicial system’s
interest in obtaining the most efficient resolution of controversies,” and (5) “the
shared interest of the several states in furthering fundamental substantive
social policies.”  Id.  “Only in rare cases . . . will the
exercise of jurisdiction not comport with fair play and substantial justice
when the nonresident defendant has purposefully established minimum contacts.” 
Id.  Here, appellants only aver that
“[t]he assumption of jurisdiction by the court over [appellants] would offend
traditional notions of fair play and substantial justice, depriving [them] of
due process as guaranteed by the Constitution of the United States.”  The State
of Texas has an obvious interest in providing a forum for resolving disputes
involving its citizens.  Lewis v. Indian Springs Land Corp., 175 S.W.3d
906, 919 (Tex. App.—Dallas 2005, no pet.).  Appellants have failed to meet the
burden of putting forth evidence that would render jurisdiction unreasonable.

            We
hold that appellants failed to negate general jurisdiction.  Accordingly, we
overrule appellants’ sole issue and affirm the trial court’s order overruling the
special appearance.

 

 

                                                                                                JIM
R. WRIGHT

                                                                                                CHIEF
JUSTICE

 

November 10, 2011

Panel consists of:  Wright, C.J.,

McCall, J., and Kalenak, J.