**Jose RAMIREZ and Antonia Ramirez, Individually and as Next Friends of Maria de los Angeles Ramirez, A Minor Child, and Claudia Ramirez, Appellants,**

v.

**Morad HARIRI and Nadereh Hariri, Appellees.**

No. 05–04–00407–CV.

Court of Appeals of Texas, Dallas.

June 27, 2005.

914

J. Scott McLain, Edinburg, Victor Manuel Carrera, McAllen, for Appellant.

Gregory R. Ave, Dawn Christine Woelfel Hansen, Touchstone, Bernays, Johnston, Beall & Smith, Dallas, for Appellee.

Before Justices MOSELEY, FRANCIS, and MAZZANT.

## OPINION

Opinion By Justice MOSELEY.

In this appeal of an order sustaining a special appearance, we address whether the alleged undercapitalization of a corporation, by itself, is a sufficient basis for piercing the corporate veil and attributing the corporation's jurisdictional contacts to its shareholders, subjecting them to the jurisdiction of the Texas courts. We conclude it is not, and affirm the trial court's order.

## BACKGROUND

Claudia Ramirez and Maria de los Angeles Ramirez, a minor child, were injured in a house fire allegedly caused by a defectively designed and/or manufactured portable radio, Cornet Model RC–1727. Cornet, a California corporation, manufactured the radio and placed it in the stream of commerce, where it was sold to the Ramirezes. Jose Ramirez and Antonia Ramirez, individually and as next friends of Maria, and Claudia sued Cornet in Texas. Cornet did not contest personal jurisdiction.

Subsequently the Ramirezes amended their petition to add as defendants Morad Hariri and Nadereh Hariri, who were Cornet's sole shareholders. The Ramirezes' amended petition asserts that Cornet was undercapitalized as the corporation is no longer in business and has no assets. The Hariris filed a special appearance to contest the assertion of personal jurisdiction. After a hearing, the trial court sustained the Hariris' special appearance. The trial court found Cornet had assets greater than $250,000 at the time the Ramirezes bought the radio, Cornet maintained liability insurance, and Cornet had positive net equity at the time the company's assets were sold.

The Ramirezes appeal, asserting four issues: (1) the evidence is legally and factually insufficient to support the trial court's findings regarding Cornet's assets, liability insurance, and net equity; (2) Cornet was undercapitalized as a matter of law; (3) the trial court findings are against the great weight and preponderance of the evidence; and (4) the trial court erred in granting the Hariris' special appearance.

### STANDARD OF REVIEW

A Texas court may exercise jurisdiction over a non-resident defendant if (1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with the due process clause of the United

States Constitution. *BMC Software Belgium N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex.2002). The broad language of the long-arm statute permits a Texas court to exercise jurisdiction as far as the federal constitution will permit. *Id.* Consequently, in determining whether jurisdiction exists, we need only determine whether the exercise of jurisdiction comports with the due process clause of the United States Constitution. *See City of Riverview, Mich. v. Am. Factors, Inc.*, 77 S.W.3d 855, 857 (Tex.App.-Dallas 2002, no pet.). The due process clause permits a court to exercise jurisdiction over a non-resident defendant if (1) the defendant has purposefully established minimum contacts with the forum state, and (2) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The defendant's activities in the forum must justify a conclusion that the defendant could reasonably anticipate being haled into a Texas court. *Am. Type Culture Collection, Inc. v. Coleman*, 83 S.W.3d 801, 806 (Tex.2002), *cert. denied*, 537 U.S. 1191, 123 S.Ct. 1271, 154 L.Ed.2d 1025 (2003).

The plaintiff bears the initial burden of pleading facts sufficient to bring a non-resident defendant within the provisions of the Texas long-arm statute. *BMC Software*, 83 S.W.3d at 793. A non-resident defendant challenging personal jurisdiction through a special appearance ordinarily carries the burden of negating all alleged bases of personal jurisdiction. *Id.* However, if the plaintiff seeks to assert jurisdiction over a non-resident defendant under a theory that the corporate fiction should be disregarded and the corporation's jurisdictional contacts should be imputed to its non-resident shareholders, the plaintiff must prove that theory. *See BMC Software*, 83 S.W.3d at 798; *Le Meridien Hotels & Resorts v. LaSalle Hotel Operating P'ship, I, L.P.*, 141 S.W.3d 870, 878 (Tex.App.-Dallas 2004, no pet.).

The exercise of personal jurisdiction over a non-resident is ultimately a question of law that often requires the resolution of factual issues as well. *Kytel Int'l Group, Inc. v. Rent-A-Ctr., Inc.*, 132 S.W.3d 717, 719 (Tex.App.-Dallas 2004, no pet.) (citing *BMC Software*, 83 S.W.3d at 794). We review the trial court's fact findings for legal and factual sufficiency, but conduct a de novo review of its legal conclusions. *Id.*

### DISCUSSION

The trial court found that the Hariris: (1) are not, and have never been, residents of Texas; (2) are not required to maintain and do not maintain registered agents for service in Texas; (3) do not engage, and have not engaged in business in Texas; (4) have not committed any tort in Texas. These findings of fact are not in dispute. Because there is not an individual basis for personal jurisdiction in Texas over the Hariris, the only means of asserting personal jurisdiction is the imputation of Cornet's contacts onto these individual shareholders through the theory supporting the piercing of Cornet's corporate veil.

The Ramirezes assert that because Cornet was undercapitalized, its shareholders should be subject to personal jurisdiction. They point to evidence that the business was liquidated and closed subsequent to the filing of the lawsuit. Because Cornet cannot pay a judgment, the Ramirezes contend Cornet is undercapitalized. However, there is also evidence in the record that prior to this lawsuit, Cornet had assets greater than $250,000, yearly sales grossing more than $1 million, and liability insurance.

The parties dispute when capitalization of the corporation is to be measured. The Ramirezes argue capitalization is mea-

sured at the time of the lawsuit, while the Hariris contend it is at the time the product was delivered. The determination of when to measure capitalization would be critical to the issue of whether there was sufficient evidence to support the finding that Cornet was inadequately capitalized. However, we do not reach this issue.

The Ramirezes assert that undercapitalization, by itself and without reference to any other factors, is sufficient to justify piercing the corporate veil and attributing Cornet's jurisdictional contacts to the Hariris. We conclude that undercapitalization alone, even if established, is not a sufficient basis to disregard the corporation and assert personal jurisdiction over the shareholders.

Generally, jurisdiction over an individual cannot be predicated on jurisdiction over a corporation. *Clark v. Noyes,* 871 S.W.2d 508, 518 (Tex.App.-Dallas 1994, no writ.); *Leon Ltd. v. Albuquerque Commons,* 862 S.W.2d 693, 708 (Tex.App.-El Paso 1993, no writ.). However, if a basis exists for disregarding the corporate fiction, personal jurisdiction over a non-resident party may be established by imputing the jurisdictional contacts of the corporate entity to its shareholders. *See BMC Software,* 83 S.W.3d at 798 (alter ego theory).

In *Castleberry v. Branscum,* 721 S.W.2d 270 (Tex.1986), the Texas Supreme Court recognized several situations in which Texas courts will disregard the corporate fiction:

(1) when the fiction is used as a means of perpetrating fraud;

(2) where a corporation is organized and operated as a mere tool or business conduit of another corporation;

(3) where the corporation fiction is resorted to as a means of evading an existing legal obligation;

(4) where the corporate fiction is employed to achieve or perpetuate monopoly;

(5) where the corporate fiction is used to circumvent a statute; and

(6) where the corporate fiction is relied upon as a protection of crime or to justify wrong.

*Id.* at 272. In a footnote, *Castleberry* goes on to state: "Inadequate capitalization is another basis for disregarding the corporate fiction." *Id.* at n. 3. However, neither the two cases cited for that proposition nor, we believe, the text of the footnote, supports the conclusion that inadequate capitalization, standing alone, is a basis for disregarding the corporate form of doing business.

*Castleberry's* footnote cites *Torregrossa v. Szelc,* 603 S.W.2d 803 (Tex.1980) and *Tigrett v. Pointer,* 580 S.W.2d 375, 381–82 (Tex.Civ.App.-Dallas 1978, writ ref'd n.r.e.). In *Torregrossa,* the supreme court held that the evidence did not support a finding of alter ego, such as to render a corporate vice-president personally liable for a judgment against the corporation. After concluding there was no evidence of a sham corporate structure, the court went on to discuss the court of appeal's decision, which it characterized as reasoning "that the small capitalization of the corporation supported the jury finding that the corporation was the alter ego of Torregrossa so as to justify piercing the corporate veil." *Torregrossa,* 603 S.W.2d at 804. The court noted that the corporation was formed with the minimum capital of $1,000, but noted "there is no showing that this was an unfair device designed to achieve an inequitable result." *Id.* Indeed, citing a lack of evidence that there were unpaid creditors, what the assets were when the charter was forfeited, or what happened to those assets, the court concluded "there is no showing that this corporation was undercapitalized." *Id.*

*Torregrossa* went on to discuss *Tigrett,* which the court of civil appeals had cited

"in support of its holding that insufficient capitalization is a sufficient ground to pierce the corporate veil." *Id.* at 805. It concluded *Tigrett* "does not support such a holding in that it was there said that '[i]nadequate capitalization by itself may not be a sufficient ground to pierce the corporate veil.'" *Id.* Although *Tigrett* recognized inadequate capitalization as a factor in determining whether to render another liable for the corporation's actions, the supreme court noted that in that case the inadequate capitalization was part of a fraudulent scheme. *Id.*

The Ramirezes cite no authority for the proposition that undercapitalization of a corporation is a sufficient basis, without other factors, to support an assertion of personal jurisdiction over the shareholders of a corporation. In a tort case, the financial strength or weakness of a corporation is an important factor in deciding whether to disregard the corporate fiction. *Lucas v. Texas Industries, Inc.* 696 S.W.2d 372, 375 (Tex.1984); *see also Castleberry,* 721 S.W.2d at 272. However, the mere existence of undercapitalization is not determinative. *See Shaw v. Maddox Metal Works, Inc.,* 73 S.W.3d 472, 481 (Tex.App.-Dallas 2002, no pet.). Inadequate capitalization of a corporation is only one factor to be considered in piercing the corporate veil. *See id.; Tigrett,* 580 S.W.2d at 382.

The Ramirezes alleged only that Cornet was undercapitalized and presented evidence only on that issue. Because undercapitalization alone is not sufficient to disregard Cornet's corporate status, its contacts may not be imputed to the Hariris as a basis for personal jurisdiction. The Hariris, as individuals, do not have sufficient contacts with the state of Texas to support personal jurisdiction. Therefore, we resolve the Ramirezes' issues against them.

We affirm the trial court's order.