In The



Court of Appeals



Ninth District of Texas at Beaumont



 __________________ 


 

NO. 09-06-069 CV


______________________


 

ROBERT BRUCE DALGLISH AND PETER C. MORSE, Appellants



V.



ROYAL INDEMNITY COMPANY, Appellee






On Appeal from the 58th District Court


 Jefferson County, Texas 


Trial Cause No. D-167370






MEMORANDUM OPINION


 Royal Indemnity Company sued MP III Holdings, Inc., (1) Peter Morse, and Robert
Dalglish, among others, for damages in connection with alleged fraudulent tuition loan
schemes. Morse and Dalglish, Pennsylvania residents, contested the trial court's jurisdiction
in a special appearance motion. The trial court denied their motion, and they filed this
interlocutory appeal. We conclude under the circumstances the exercise of personal
jurisdiction over the appellants would offend traditional notions of fair play and substantial
justice. We reverse and render judgment dismissing the claims against the individual
defendants for want of personal jurisdiction. 

Background


 Peter Morse started MP III in 1993 when he purchased the assets of truck driving
training schools. MP III operated the schools across the country until 2002. Five schools
were in Texas. Peter Morse was MP III's majority shareholder and chairman of the board
of directors. Robert Dalglish was president and a shareholder. 

 Royal alleged MP III and appellants operated a fraudulent loan scheme. MP III had
a contract with Student Finance Corporation, (2) a lender, to provide financing for students at
MP III schools. Royal, a credit risk insurer, had an agreement with SFC to provide
insurance: Royal wrote policies to insure the loans in the event of unexpectedly high loan
defaults. SFC sold the loans to investors. SFC paid MP III a discounted amount from the
loan sales if the first two loan payments were made and the student graduated from an MP
III school. Royal alleged MP III was falsifying the loan applications and "seasoning" the
loans to give the appearance they were "performing" loans. (3) Royal further alleged SFC and
MP III were misrepresenting the students' true credit risks to Royal. The trial court found
the loans defaulted at a high rate. Royal, as the insurer for the loans, alleged it suffered large
monetary losses. 

Delaware Veil-Piercing Law


 The trial court applied Delaware law to the question of what circumstances justify
disregarding the corporate form. In their brief, appellants argue Texas law should apply. 
Royal states there is no meaningful difference between Texas and Delaware law on veil-piercing. At oral argument, appellants conceded this point. We therefore need not conduct
a conflict of law analysis, because the parties do not identify a distinction which in this case
would make a difference. See Vandeventer v. All Am. Life & Cas. Co., 101 S.W.3d 703, 712
(Tex. App.--Fort Worth 2003, no pet.)(In the absence of a true conflict, an appellate court
need not undertake a choice of law analysis.). See generally Cmmw. Gen. Corp. v. York, 177
S.W.3d 923, 925 (Tex. 2005) (separateness of corporation ceased); Tex. Bus. Corp. Act
Ann. art. 2.21(A)(2) (Vernon 2003)(fraud). Compare Crosse v. BCBSD, Inc., 836 A.2d 492,
497 (Del. 2003)(creation of sham entity designed to defraud); and Wallace ex rel. Cencom
Cable Income Partners II, L.P. v. Wood, 752 A.2d 1175, 1183-85 (Del. Ch. 1999)(officer
domination and control, fraud, or similar injustice). Under the circumstances, and in light of
the trial court's finding, we assume Delaware law applies. Nevertheless, we will also
assume, for purpose of our jurisdictional analysis and given the parties' arguments on appeal,
the veil-piercing law of Delaware is essentially the same as that of this State. 

Personal Jurisdiction


 The Texas long-arm statute governs a Texas court's exercise of jurisdiction over a
nonresident defendant. See Tex. Civ. Prac. & Rem. Code Ann. §§ 17.041-.045 (Vernon
1997 & Supp. 2006); Am. Type Culture Collection, Inc. v. Coleman, 83 S.W.3d 801, 806
(Tex. 2002). If the exercise of jurisdiction comports with federal due process limitations, the
Texas long-arm statute requirements are satisfied. Id. Under the Fourteenth Amendment's
due process clause, jurisdiction is proper if (1) a nonresident defendant has established
"minimum contacts" with Texas, and (2) maintenance of the suit does not offend "traditional
notions of fair play and substantial justice." Id. (quoting Int'l Shoe Co. v. Washington, 326
U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed.95 (1940)). 

 The trial court has personal jurisdiction if the nonresident defendant's minimum
contacts give rise to either general jurisdiction or specific jurisdiction. BMC Software
Belgium, N.V. v. Marchand, 83 S.W.3d 789, 795 (Tex. 2002). General jurisdiction is
established when a defendant's contacts in a forum are continuous and systematic so that the
forum may exercise jurisdiction over the defendant even if the cause of action did not arise
from or relate to activities conducted within the forum state. Id. at 796. Specific jurisdiction
requires the defendant's alleged liability arise from or be related to an activity conducted
within the forum. Id.

 A nonresident defendant generally has the burden to negate all bases for personal
jurisdiction asserted by the plaintiff. Id. at 793. When the claimant asserts personal
jurisdiction under a veil-piercing theory, the party seeking to disregard the corporate veil
must prove the allegation. Id. at 798-99; Ramirez v. Hariri, 165 S.W.3d 912, 915 (Tex.
App.--Dallas 2005, no pet.). 

 Whether a trial court has personal jurisdiction over a defendant is a question of law. 
BMC Software, 83 S.W.3d at 794. To resolve this question, a trial court must frequently
resolve questions of fact. Id. We review the trial court's factual findings for legal and
factual sufficiency, and we review the trial court's legal conclusions de novo. Id. 

 When considering the trial court's ruling on the special appearance, we do not reach
the merits of the underlying case. I & JC Corp. v. Helen of Troy L.P., 164 S.W.3d 877, 890
(Tex. App.--El Paso 2005, pet. denied). We do not decide whether the defendants are liable
but only whether the trial court has personal jurisdiction over the defendants to determine
their liability. Id. (4) 

Royal's Jurisdictional Arguments 


 Royal argues the trial court has general jurisdiction over Morse and Dalglish because
the individual defendants used the corporate form as a sham to perpetrate a fraud and, under
a veil-piercing theory, MP III's acts are imputed to them. (5) The trial court's jurisdiction over
MP III is not disputed. Royal also pled specific jurisdiction over Dalglish.

 Royal argues Dalglish is subject to specific jurisdiction in his individual capacity,
because there is sufficient evidence in the record to suggest he used the corporate identity to
participate in a fraudulent scheme for which he could be individually liable. Royal says
Dalglish, as chief executive of MP III, knew of and directed the flow of loan applications and
money orders into Texas. 

 Dalglish did not individually do business in Texas, and he would not have necessarily
anticipated being called to Texas to litigate the propriety of his actions in Pennsylvania. 
Specific jurisdiction must turn on defendant's contacts, not where the defendant "directed
a tort." Michiana Easy Livin' Country, Inc. v. Holten, 168 S.W.3d 777, 789-90 (Tex. 2005). 
The concept that a defendant may be subject to specific jurisdiction in Texas based solely on
allegations that he committed tortious activity in another state was considered and rejected
in Michiana. See id. at 790-92. 

 Royal's general jurisdiction veil-piercing allegations are directed at use of the
corporate form as a sham to perpetrate a fraud. See Castleberry v. Branscum, 721 S.W.2d
270, 271 (Tex. 1986); (6)
 Pabich v. Kellar, 71 S.W.3d 500, 507 (Tex. App.--Fort Worth 2002,
pet. denied). Generally, a court will not hold individual officers, directors, or shareholders
liable for a corporation's obligations unless it appears the individuals are using the corporate
entity as a sham to, among other things, perpetrate a fraud. See Castleberry, 721 S.W.2d at
270; Bell Oil & Gas Co. v. Allied Chem. Corp., 431 S.W.2d 336, 340 (Tex. 1968); Pabich,
71 S.W.3d at 507; see also Tex. Bus. Corp. Act Ann. art. 2.21 (Vernon 2003). (7)

 Royal argues MP III was a mere shell because of inadequate capitalization. The
question of undercapitalization involved a battle of experts. Appellants' expert testified MP
III had adequate capital. Royal's expert testified the corporation was undercapitalized. Both
experts used the "current ratio" and liability-to-asset ratio in their analysis. They relied on
different factors in arriving at their results. Both experts acknowledged the shareholders'
infusion of capital into the corporation. They had different opinions on the significance of
that contribution. Each party questioned certain assumptions made in the other party's
capitalization analysis. The trial court found MP III was undercapitalized. Generally,
inadequate capitalization as part of a fraudulent scheme will support piercing the corporate
veil. See Hariri, 165 S.W.3d at 916-17. 

 As part of its findings, the trial court also concluded appellants received improper
management fees from the corporation. The court found appellants personally profited from
MP III while leaving MP III undercapitalized. Royal argues appellants were siphoning assets
from the corporation and, in effect, were "double-billing," at least for Dalglish's time. 
Appellants argue the management fees were reasonable and did not constitute the siphoning
of funds from MP III for personal benefit. Dalglish testified the management fees were for
consulting services provided to MP III by Morse Partners through Morse, Dalglish, and
possibly a third person. Evidence in the record shows infusion of capital into the
corporation. Generally, in a battle of competing experts where the admissibility of
the testimony is not challenged, the factfinder is responsible for determining the credibility
of the witnesses and the weight to be given their testimony. See generally City of Keller v.
Wilson, 168 S.W.3d 802, 813 (Tex. 2005); Morrell v. Finke, 184 S.W.3d 257, 282 (Tex.
App.--Fort Worth 2005, pet. abated). The trial court as factfinder in the jurisdictional
determination is free to weigh the evidence and decide which witness and evidence to credit. 
See Morrell, 184 S.W.3d at 282. The same veil-piercing finding will ultimately, however,
be fully litigated at a trial, and a jury may or may not agree with the finding. We must
determine whether "traditional notions of fair play and substantial justice" support the
exercise of personal jurisdiction by the trial court. 

"Fair Play and Substantial Justice"


 Rather than focus on "liability" facts in this case, our approach is to determine the
"fair play and substantial justice" question, as it is dispositive. Notwithstanding the trial
court's role as factfinder in the jurisdictional determination, the trial court's exercise of
personal jurisdiction must not offend traditional notions of fair play and substantial justice. 
See Int'l Shoe, 326 U.S. at 316; Guardian Royal Exch. Assurance, Ltd. v. English China
Clays, P.L.C., 815 S.W.2d 223, 231 (Tex. 1991); see Brittingham-Sada de Powers v.
Brittingham-McLean, 158 S.W.3d 518, 524-25 (Tex. App.--San Antonio 2004, pet. denied)
(Since issue of fair play and substantial justice was dispositive, appellate court limited its
discussion to that prong.). The factors to be considered in deciding the "fair play and
substantial justice" question are as follows:

 (1) the burden on the defendants;

 (2) the interests of the forum state in adjudicating the dispute, including the 
 State's regulatory interest;

 (3) the plaintiff's interest in obtaining convenient and effective relief;

 (4) the interstate judicial system's interest in obtaining the most efficient 
 resolution of controversies;

 (5) the shared interest of the several states in furthering fundamental 
 substantive social policies. 

Guardian Royal, 815 S.W.2d at 228; see also Asahi Metal Indus. Co. v. Super. Ct., 480 U.S.
102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). 

 Appellants argue that exercising jurisdiction over them would not comport with fair
play and substantial justice. They contend litigating the veil-piercing and fraud claim to a
verdict in Texas would be a heavy burden. Neither is a Texas resident. Both reside and work
in Pennsylvania. Morse has had no personal contacts with Texas. Dalglish's contacts have
been minimal. Defending the lawsuit in Texas would likely require considerable time,
expense, and travel. The witnesses and corporate records necessary to establish or refute the
veil-piercing theory would likely primarily be in Pennsylvania, where MP III is
headquartered and appellants reside. The company is incorporated in Delaware. Royal
argues Delaware law applies. Compared to Pennsylvania and Delaware, Texas would not
appear to have a greater interest, regulatory or otherwise, in determining whether the
corporate entity should be disregarded and the shareholders held liable.

 Royal is a foreign corporation with its principal place of business in North Carolina.
We fail to see how Royal has a significant interest in litigating the veil-piercing issues in
Texas rather than where appellants reside. Texas has no greater interest than Delaware or
Pennsylvania in providing a forum for Royal to obtain redress for the issues concerning
shareholder liability. Other states -- where MP III is incorporated or headquartered, or where
the individuals reside and work -- would offer more convenient and effective relief. The
interstate judicial system's interest in obtaining the most efficient resolution of the
controversy would not be served by litigating these shareholder liability issues in Texas. 

 Under the circumstances, requiring the individuals to defend the claims in Texas
would offend traditional notions of fair play and substantial justice. Accordingly, we reverse
the trial court's order and render judgment dismissing the claims against Peter Morse and
Robert Dalglish for want of personal jurisdiction over the individual defendants. 

 REVERSED AND RENDERED.

 ____________________________

 DAVID GAULTNEY

 Justice



Submitted on September 7, 2006

Opinion Delivered November 16, 2006


Before McKeithen, C.J., Gaultney and Kreger, J.J. 


 
1. MP III Holdings was incorporated in Delaware and has its principal place of business
in Pennsylvania.
2. SFC is a Pennsylvania corporation. One of the trial court's finding of facts states "SFC
is in Chapter 7 bankruptcy and is therefore not a party to these proceedings."
3. Appellants acknowledge that MP III made the first two payments on the loan, but
appellants say the payments were also loans. 
4. In Michiana Easy Livin' Country, Inc. v. Holten, 168 S.W.3d 777, 791 (Tex. 2005),
a specific jurisdiction case, the Texas Supreme Court disapproved appellate opinions which
had held that "specific jurisdiction turns on whether a defendant's contacts were tortious
rather than the contacts themselves." Id. at 791-92. 
5. Appellants couch their arguments on appeal in terms such as "alter ego" and "veil-piercing." Royal pled that appellants used the corporation as a sham to perpetrate a fraud.
Essentially, Royal sought to disregard the corporate entity and establish jurisdiction over
appellants individually. 
6. Castleberry has been superseded in part by subsequent statutory amendments. See
Tex. Bus. Orgs. Code Ann. § 21.223 (Vernon 2006) (effective January 1, 2006).

7. When applicable, article 2.21 of the Texas Business Corporations Act requires proof
that the shareholder used the corporation for the purpose of perpetrating and did perpetrate
an actual fraud on the plaintiff primarily for the direct benefit of the shareholder.