NUMBER 13-07-439-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


JOHN CHAVEZ CORELLA, JR., SYLVIA 

CORELLA, AND TRACY A. WEIR, Appellants,


v.
 


GARY A. MAGNUSON, APRIL F. MAGNUSON,

JOHN C.M. THICKETT, SUSAN L. BLACK THICKETT,

JESUS VALENZUELA, JR., GARY L. TRUJILLO,

MELISSA B. TRUJILLO, AND CORELLA TELECOM,

L.L.C., AN ARIZONA LIMITED LIABILITY COMPANY, Appellees.

 

On appeal from the 214th District Court 


of Nueces County, Texas.


 


MEMORANDUM OPINION



Before Justices Rodriguez, Garza, and Vela


Memorandum Opinion by Justice Rodriguez




 Appellants, John Chavez Corella, Jr. (John), Sylvia Corella, and Tracy A. Weir,
complain in this accelerated interlocutory appeal that the trial court erred in denying
their special appearance. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(7)
(Vernon Supp. 2007); Tex R. App. P. 28.1. By two issues, appellants contend that the
trial court erred because (1) the plaintiffs did not plead facts sufficient to permit the
Texas long-arm statute to reach them individually, see Tex. Civ. Prac. & Rem. Code
Ann. § 17.042 (Vernon 1997), and (2) they negated all bases for Texas courts to
exercise jurisdiction over them. We reverse and render in part and affirm in part.

I. Background Appellees, Gary A. Magnuson, April F. Magnuson, John C. M. Thickett, Susan
L. Black Thickett, Jesus Valenzuela, Jr., Gary L. Trujillo, Melissa B. Trujillo, and
Corella Telecom, L. L. C. (CTL), an Arizona Limited Liability Company, sued
appellants alleging that John, Sylvia, and Tracy committed various torts, breached
various contracts, and committed statutory violations. John, Sylvia, and Tracy, all
Arizona residents, filed a special appearance objecting to the court's exercise of
jurisdiction over them. Following an evidentiary hearing, the trial court issued its order
denying appellants' special appearance. This appeal ensued.

II. Standard of Review

 Whether the trial court has personal jurisdiction over a defendant is a question
of law. BMC Software Belgium, N.V. v. Marchand, 83 S.W.3d 789, 794 (Tex. 2002). 
The plaintiff bears the initial burden of pleading "sufficient allegations to bring a
nonresident defendant within the provisions of the long-arm statute." Id. at 793. 
When a special appearance is filed, the nonresident defendant assumes the burden
of negating all bases of personal jurisdiction asserted by the plaintiff. Moki Mac River
Expeditions v. Drugg, 221 S.W.3d 569, 574 (Tex. 2007); BMC Software, 83 S.W.3d at
793; El Puerto de Liverpool, S.A. de C.V. v. Servi Mundo Llantero, S.A. de C.V., 82
S.W.3d 622, 628 (Tex. App.-Corpus Christi 2002, pet. dism'd w.o.j.). The trial court
determines the special appearance by referring to the pleadings, any stipulations
made by and between the parties, any affidavits and attachments filed by the parties,
discovery, and any oral testimony. Tex. R. Civ. P. 120a(3).

 If challenged, we may review the trial court's findings of fact for legal and
factual sufficiency. BMC Software, 83 S.W.3d at 794. We review a trial court's legal
conclusions de novo. Moki Mac, 221 S.W.3d at 574 (citing BMC Software, 83 S.W.3d
at 794). Although an appellant may not challenge the trial court's conclusions of law
as factually insufficient, we may "review the trial court's legal conclusions drawn from
the facts to determine their correctness." Id.III. Analysis

A. Sufficiency of the Pleadings

 By their first issue, appellants contend that the trial court erred in denying their
special appearance because appellees failed to carry their initial burden of pleading
facts sufficient to permit the Texas long-arm statute to reach them individually. See
BMC Software, 83 S.W.3d at 793; see also Tex. Civ. Prac. & Rem. Code Ann. § 17.042
(Vernon 1997).

 Appellees' petition included, among other jurisdictional allegations, (1) the
following acts allegedly committed by John, Sylvia, and Tracy:

 John Corella entered Texas on numerous occasions to develop with the
CTL Plaintiffs an investment opportunity with GTE, an Irving, Texas
company;

 

 John Corella met with representatives of GTE in Texas to discuss
investing in GTE telephone exchanges;


 John Corella communicated and met with CTL Plaintiffs in Texas to put
together a bid for the GTE assets;


 John Corella communicated with the CTL Plaintiffs in Texas regarding
CTL business;


 John Corella, Sylvia Corella, and Tracy Weir advised CTL Plaintiffs in
Texas regarding the Valor Telecommunications stock;


 John Corella entered Texas to attend Valor board meetings;


 John Corella, Sylvia Corella and Tracy Weir oversaw the handling of the
Valor Telecommunications stock; and


 The Corella Defendants communicated misrepresentations to CTL
Plaintiffs in Texas regarding the holding of the Valor stock, the Kerrville
Acquisition and the sale and value of the Valor stock.


 Appellants rely on Ramirez v. Hariri, 165 S.W.3d 912, 915 (Tex. App.--Dallas
2005, no pet.) and Tang v. Garcia, No. 13-06-00367-CV, 2007 Tex. App. LEXIS 6148,
at *15 (Tex. App.--Corpus Christi Aug. 2, 2007, pet. denied) (mem. op.), as support
for their contention that appellees failed to plead sufficient facts to bring appellants,
individually, within the scope of the long arm statute. However, appellants' reliance
on Ramirez and Tang is misplaced.

 In Ramirez, the plaintiffs predicated jurisdiction over the individual defendants
based on jurisdiction over a corporation. Ramirez, 165 S.W.3d at 916. Under that
theory, the claimant must prove that the nonresident is actually the alter ego of the
resident corporation. Id. at 916-17. In this case, appellees' jurisdictional allegations
are not predicated on jurisdiction over a Texas corporation, but on acts committed by
appellants in Texas. 

 Also, relying on our decision in Tang v. Garcia, appellants argue that allegations
in appellees' petition are judicial admissions that each appellant was acting in a
representative, and not in an individual, capacity and was, therefore, immune from the
reach of the trial court's jurisdiction under the fiduciary shield doctrine. (2) Tang, 2007
Tex. App. LEXIS 6148, at *14. In Tang, because the plaintiffs chose to couch their
jurisdictional allegations only in fiduciary or representative terms and did not plead
any facts raising individual liability against the nonresident defendants, this Court
decided that the fiduciary shield doctrine protected the nonresident defendants from
jurisdiction in Texas. Id. at *15 ("Garcia's factual allegations and jurisdictional
evidence presents an extraordinarily unique set of facts that compels the application
of the fiduciary shield doctrine."). Here, however, appellees did not couch their
jurisdictional allegations solely in representative terms. Rather, appellees pleaded
facts alleging individual liability. Therefore, appellant's argument is not supported by
Tang. 

 We, thus, conclude appellees carried their initial burden of pleading facts
sufficient to permit the Texas long-arm statute to reach appellants individually, and
the trial court did not err in denying appellants' special appearance on that basis. See
BMC Software, 83 S.W.3d at 793. We overrule appellants' first issue.

B. Negating All Bases of Jurisdiction

 By their second issue, appellants contend they have negated all bases for the
trial court to exercise jurisdiction over them. See Moki Mac, 221 S.W.3d at 574 ("The
nonresident defendant then assumes the burden of negating all bases of jurisdiction
in [plaintiffs' jurisdictional] allegations.") (citing BMC Software, 83 S.W.3d at 793).

1. Findings of Fact

 The trial court's findings of fact are as follows:

 1. Plaintiffs and John Corella teamed up to investigate the purchase
of certain rural GTE telephone operation assets located in East
Texas and West Texas, much of which investigation took place at
or by communications to and from GTE headquarters in Irving,
Texas;

 

 2. John Corella purposefully came to Texas on various occasions to
meet with GTE representatives and Plaintiffs, performing due
diligence on the investment, negotiating his and Texas Plaintiffs
Thickett and Magnuson's respective interests in a jointly owned
Texas telephone business, and eventually working with Thickett
and Magnuson in preparing a bid to purchase the GTE Texas
assets;


 3. John Corella routinely called, emailed, faxed and otherwise
communicated financial, operating, strategic and other information
material to the investment decision to Plaintiff Magnuson who was
performing due diligence from his office in Nueces County, Texas;

 

 4. The competing purchasers of the Texas GTE assets teamed up
and created one Texas-Domiciled company eventually known as
Valor Telecommunications Southwest, LLC (hereinafter referred
to as "Valor") to hold and own certain GTE telephone operations
including the East Texas and West Texas exchanges which
Plaintiffs and John Corella previously bid on;


 5. In recognition and in exchange principally for the six months of
due diligence on the GTE Texas assets performed by Plaintiffs
and John Corella as well as a cash contribution, Valor issued
stock in the name of John Corella;


 Plaintiffs and John Corella agreed that they would jointly own the
Valor shares and Plaintiffs and John Corella created Corella
Telecom, LLC (hereinafter referred to as "CTL"), to hold their
collective and jointly-owned investment in the Valor shares; (3)

 

 7. John Corella was the majority owner and member of CTL and
Plaintiffs were minority owners and members;

 

 8. John Corella served on the Board of Valor, entering Texas on
numerous occasions to attend meetings as well as engaging in
further contact with Valor at its Irving, Texas headquarters by
phone, email and correspondence; 

 

 9. Defendants Sylvia Corella and Tracy Weir engaged in the
management and the corporate affairs of CTL and engaged in
contacts in Texas with GTE and Plaintiffs Magnuson and Thickett;

 

 10. John Corella, Sylvia Corella and Tracy Weir . . . received
information, made representations and took action relating to the
Kerrville Acquisition, an opportunity to invest in additional shares
of Valor stock to fund the acquisition of certain Kerrville, Texas
telephone assets, with each of them [John, Sylvia, and Tracy]
communicating with GTE representatives in Irving, Texas;

 

 11. Defendants engaged in telephone calls as well as letters and
emails to GTE representatives in Texas relating to the holding of
the Valor stock in the name of John Corella individually and the
change of that ownership to CTL;

 

 12. Defendants communicated with Valor representatives in the
Irving, Texas headquarters, regarding the opportunity to sell the
Valor stock;


 13. John Corella unilaterally declined to exercise the option to sell
Valor stock;

 

 14. After the Valor stock repurchase deadline passed, John Corella
attended a telephone meeting and exchanged emails with all the
Plaintiffs, some of whom resided in Texas, erroneously
communicating to them that the option to sell the Valor stock was
still viable and resulting in the Plaintiffs investing additional capital
and time in the venture;

 

 15. John Corella engaged in continuous and systematic contacts with
Texas in pursuing the opportunity to purchase GTE operations,
participating in the business and management of the Texas-based
business Valor, traveling to Texas for other business operations
and forming, incorporating and operating at least two other
businesses in Texas;

 

 16. Sufficient evidence was presented that a substantial portion of
Defendants' actions in pursuing business opportunities in Texas
were actually conducted in Texas;

 

 17. This Court has an interest in adjudicating this dispute as four of
the Plaintiffs are Texas residents and the transactions at issue
involve representations, acts and omissions in Texas by
Defendants involving the purchase and sale of Texas assets; and


 18. Plaintiffs sufficiently pled that the Defendants did business in the
State of Texas, had purposeful contacts with Texas, committed
tortious and fraudulent activities in Texas and engaged in
continuous and systematic contacts with Texas.


 Because appellants only complain that specific conclusions of law are
erroneous, as discussed below, the above findings of fact are unchallenged on appeal
and are therefore binding on this Court "unless the contrary is established as a matter
of law, or if there is no evidence to support the finding." Davey v. Shaw, 225 S.W.3d
843, 853 (Tex. App.--Dallas 2007, no pet.); El Puerto, 82 S.W.3d at 630 (citing
McGalliard v. Kuhlmann, 722 S.W.2d 694, 696 (Tex. 1986); see Carter v. Carter, 736
S.W.2d 775, 777 (Tex. App.--Houston [14th Dist.] 1987, no writ) (holding that findings
of fact are binding on appellate court unless challenged by point of error) (citing Katz
v. Rodriguez, 563 S.W.2d 627, 631 (Tex. Civ. App.--Corpus Christi 1977, writ ref'd
n.r.e.)). After reviewing the record in this case, we cannot conclude that evidence
contrary to the findings is established as a matter of law or that there is no evidence
to support the findings of the trial court. See Davey, 225 S.W.3d at 853; El Puerto, 82
S.W.3d at 630. Accordingly, the trial court's unchallenged findings of fact are binding
on this Court. See id.; see also Katz, 563 S.W.2d at 630 (determining that even if a
challenged finding is erroneous, two unchallenged findings "constitute undisputed
facts and are binding on the appellant as well as this Court").


2. Applicable Law

 A Texas court may exercise personal jurisdiction over a nonresident defendant
only if jurisdiction is authorized by the Texas long-arm statute, see Tex. Civ. Prac. &
Rem. Code Ann. § 17.042 (Vernon 1997), which permits Texas courts to exercise
personal jurisdiction over nonresident defendants who are doing business in Texas. (4) 
BMC Software, 83 S.W.3d at 795. Although the Texas long-arm statute lists activities
that constitute "doing business," this list is not exclusive, and "section 17.042's broad
language extends Texas courts' personal jurisdiction 'as far as the federal
constitutional requirements of due process will permit.'" BMC Software, 83 S.W.3d at
795 (quoting U-Anchor Adver., Inc. v. Burt, 553 S.W. 2d 760, 762 (Tex. 1977)). 
Therefore, "the requirements of the Texas long-arm statute are satisfied if the
exercise of personal jurisdiction comports with federal due process limitations." CSR
Ltd. v. Link, 925 S.W.2d 591, 594 (Tex. 1996).

 Under the Due Process Clause of the Fourteenth Amendment of the United
States Constitution, a Texas court may exercise personal jurisdiction over a
nonresident defendant when (1) the nonresident defendant has established minimum
contacts with the forum state, and (2) the exercise of jurisdiction comports with
"traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington,
326 U.S. 310, 316 (1945); BMC Software, 83 S.W.3d at 795; see U.S. Const. amend.
XIV, § 1. "The exercise of personal jurisdiction is proper when the contacts
proximately result from actions of the nonresident defendant which create a
substantial connection with the forum state." Guardian Royal Exch. Assurance, Ltd. v.
English China Clays, P.L.C., 815 S.W.2d 223, 226 (Tex. 1991).

 A nonresident establishes minimum contacts with Texas by purposefully
availing itself of the privileges and benefits inherent in conducting business in the
state. Moki Mac, 221 S.W.3d at 575 ("a defendant must seek some benefit,
advantage or profit by 'availing' itself of the jurisdiction") (quoting Michiana Easy Livin'
Country, Inc. v. Holten, 168 S.W.3d 777, 785 (2005)); Michiana, 168 S.W.3d at 784
("For half a century, the touchstone of jurisdictional due process has been 'purposeful
availment.'"); see Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75 (1985). There
are three parts to the purposeful availment inquiry. Michiana, 168 S.W.3d at 785. 
First, only the nonresident defendant's contacts with the forum are considered and not
the acts of a third person or another party. Id. (quoting Burger King Corp., 471 U.S.
at 475 ("This 'purposeful availment' requirement ensures that a defendant will not be
haled into a jurisdiction solely as a result of . . . the 'unilateral activity of another party
or a third person.'")). Second, the contacts must be purposeful and not "random,
isolated, or fortuitous." Id. Finally, the nonresident defendant "must seek some
benefit, advantage, or profit by 'availing' itself of the jurisdiction." Id.

 Minimum contacts with the forum may establish either specific or general
jurisdiction over the nonresident defendant. Helicopteros Nacionales de Colombia, S.A.
v. Hall, 466 U.S. 408, 414 (1984). Specific jurisdiction exists if the nonresident
defendant purposefully directed his activities at residents of Texas and the litigation
arose from or related to those contacts. See Burger King, 471 U.S. at 472;
Helicopteros, 466 U.S. at 414; Guardian Royal, 815 S.W.2d at 227. In other words,
there must be a substantial connection between the nonresident defendant's contacts
and the operative facts of the litigation. Moki Mac, 221 S.W.3d at 585 (Tex. 2007). 
The forum exercises general jurisdiction over the nonresident defendant when the
defendant's contacts in the forum are continuous and systematic, therefore allowing
the forum to exercise personal jurisdiction over the defendant "even if the cause of
action did not arise from or relate to activities conducted within the forum state." BMC
Software, 83 S.W.3d at 796.3. Sylvia and Tracy

 Sylvia and Tracy challenge the trial court's conclusion of law that it had specific
jurisdiction over them by asserting that they have not established minimum contacts
with Texas because they have not purposefully availed themselves of the benefits
and protections of Texas law. We agree.

 The trial court concluded that it "has specific jurisdiction over [Sylvia and Tracy]
because [they] had contacts with Texas that were purposeful and Plaintiffs' causes
of action arise from or relate to those contacts." The trial court based this conclusion
on its findings that Sylvia and Tracy 

 engaged in the management and the corporate affairs of CTL and
engaged in contacts in Texas with GTE and Plaintiffs Magnuson and
Thickett; received information, made representations and took action
relating to the Kerrville Acquisition . . . with each of them communicating
with GTE representatives in Irving, Texas; engaged in telephone calls
as well as letters and emails to GTE representatives in Texas relating to
the holding of the Valor stock in the name of John Corella individually
and the change of that ownership to CTL, and; communicated with Valor
representatives in the Irving, Texas headquarters, regarding the
opportunity to sell the Valor stock.


Finally, the trial court found that "sufficient evidence was presented that a substantial
portion of [Sylvia's and Tracy's] actions in pursuing business opportunities in Texas
were actually conducted in Texas."

 Based on our de novo review of the trial court's legal conclusion that it had
specific jurisdiction over Sylvia and Tracy, we cannot agree that Sylvia and Tracy
purposefully availed themselves of Texas law. There is no finding of fact, and we find
no evidence in the record to support a finding, that Sylvia and Tracy sought some
benefit, advantage, or profit by availing themselves of this jurisdiction, the second
prong of a purposeful availment analysis. See Michiana, 168 S.W.3d at 785. We,
accordingly, conclude that Sylvia and Tracy did not purposefully avail themselves of
the benefits and protection of Texas law. Thus, Sylvia and Tracy lack the necessary
minimum contacts sufficient to allow Texas courts to assert specific jurisdiction over
them, and, the trial court erred by ruling otherwise. (5) See Moki Mac, 221 S.W.3d at
575; Michiana, 168 S.W.3d at 784.

 We next address the trial court's conclusion of law that it also had general
jurisdiction over Sylvia and Tracy "because [Sylvia and Tracy] each made continuous
and systematic contacts with Texas." Because the minimum contacts inquiry is
broader and more demanding when general jurisdiction is alleged, a showing of
substantial activities in the forum state is required. Schlobohm v. Schapiro, 784 S.W.2d
355, 357 (Tex. 1990). General jurisdiction is premised on the nonresident having
consented to jurisdiction through its continuous contact invoking the benefits and
protections of Texas. Am. Type Culture Collection v. Coleman, 83 S.W.3d 801, 807
(Tex. 2002). This analysis focuses on the nature and quality of the contacts, as
opposed to the quantity. Id. The contacts under general jurisdiction "should be such
as to justify categorizing the defendant as a resident of this State." Schexnayder v.
Daniels, 187 S.W.3d 238, 243 (Tex. App.--Texarkana 2006, pet. dism'd w.o.j.).

 Based on our de novo review, we conclude that Sylvia's and Tracy's activities,
as described above, in Texas were not substantial enough to be systematic and
continuous thus subjecting them to general jurisdiction in Texas. See id. Additionally,
the evidence does not establish that their contacts invoked any benefits and
protections of the state of Texas, see Coleman, 83 S.W.3d at 807, or that their
contacts justified categorizing them as residents of Texas. See Schexnayder, 187
S.W.3d at 243.

 Accordingly, we conclude that Sylvia and Tracy have negated all bases for an
assertion of specific and general jurisdiction. We sustain the second issue as to
Sylvia and Tracy.

4. John

 Challenging the trial court's conclusion of law that "[t]he causes of action
asserted by Plaintiffs against each of the Defendants individually are claims for which
they can all be held individually liable," John first argues that he, individually, did not
have sufficient minimum contacts with Texas. However, as to John, the trial court
found the following:

 Plaintiffs and John Corella teamed up to investigate the purchase of
certain rural GTE telephone operation assets located in East Texas and
West Texas, much of which investigation took place at or by
communications to and from the GTE headquarters in Irving, Texas.
John Corella purposefully came to Texas on various occasions to meet
with GTE representatives and Plaintiffs, performing due diligence on the
investment, negotiating his and Texas Plaintiffs Thickett and
Magnuson's respective interests in a jointly owned Texas telephone
business . . . . John Corella routinely called, emailed, faxed, and
otherwise communicated financial, operating, strategic and other
information material to the investment decision to Plaintiff Magnuson
who was performing due diligence from his office in Nueces County,
Texas. . . . Valor issued stock in the name of John Corella . . . . 
Plaintiffs and John Corella agreed that they would jointly own the Valor
shares . . . and . . . created Corella Telecom, LLC . . . to hold their
collective and jointly-owned investment in the Valor shares. . . . John
Corella served on the board of Valor, entering Texas on numerous
occasions to attend meetings as well as engaging in further contact with
Valor at its Irving, Texas headquarters by phone, email and
correspondence. . . . John Corella unilaterally declined to exercise the
option to sell Valor stock. . . .


 From our de novo review, we conclude that the trial court's legal conclusion that
John could be held individually liable, as drawn from the above facts, is correct. See
Moki Mac, 221 S.W.3d at 574. Moreover, based on these findings of fact, we
conclude John's contacts were not "solely as a result of . . . the 'unilateral activity of
another party or a third person,'" and were not "random, isolated, or fortuitous." See
Michiana, 168 S.W.3d at 785. Furthermore, John did seek some benefit, advantage,
or profit by availing himself of the jurisdiction; he became a board member of a Texas-domiciled company that issued him stock. See id. Thus, John has established
minimum contacts with Texas by purposefully availing himself of the privileges and
benefits inherent in conducting business in Texas. Moki Mac, 221 S.W.3d at 575.

 Having concluded John established minimum contacts with Texas in an
individual capacity, we address John's second assertion that none of the contacts had
any substantial connection with appellees' claims. We construe this as a challenge
to the trial court's conclusion of law that it had specific jurisdiction over John. In order
to assert specific jurisdiction over John there must also be a substantial connection
between his contacts, identified above, and the operative facts of the litigation. See
Moki Mac, 221 S.W.3d at 585.

 The operative facts of the litigation in this case involve John's contacts with
Texas concerning the GTE telephone operation assets located in East and West
Texas, John's stock in Valor, John's appointment to the Valor board, John's
communications with Valor and appellees concerning the stock of a Texas-domiciled
company, and John's unilateral decision to decline to exercise the option to sell the
Valor stock. We conclude, based on these facts, that there is a substantial
connection between John's contacts and the operative facts of litigation. See id.

 Having concluded that John established minimum contacts with Texas and that
those contacts had a substantial connection to the facts of this litigation, we must next
consider whether the exercise of personal jurisdiction over him comports with
traditional notions of fair play and substantial justice, the second prong of the personal
jurisdiction analysis. See Int'l Shoe Co., 326 U.S. at 316. When making this inquiry
we consider, when appropriate, the following: (1) the burden on the nonresident
defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's
interest in obtaining convenient and effective relief; (4) the interstate judicial system's
interest in obtaining the most efficient resolution of controversies; and (5) the shared
interest of the several states in furthering substantive social policies. World-Wide
Volkswagen Corp. v. Woodson, 444 U.S. 286, 292 (1980); Guardian Royal, 815 S.W.2d
at 231. John argues that the trial court erred in concluding that he did not meet his
burden of establishing "a compelling case of why litigation in Texas would be unduly
burdensome." However, "there is no legal requirement that this hardship must be
borne instead by the plaintiff whenever the defendant is not found in the state of the
plaintiff's residence." Wright v. Sage Eng'g, Inc., 137 S.W.3d 238, 253-54 (Tex.
App.-Houston [1st Dist.] 2004, no pet.). Furthermore, the record does not indicate,
and John has provided no evidence, that litigation in Texas would be excessively
burdensome or inconvenient to him. Instead, John relies on evidence of the undue
burden on Tracy, not himself. He has failed to present a compelling case that would
render jurisdiction unreasonable. Therefore, the exercise of specific jurisdiction over
John by a Texas court does not offend traditional notions of fair play and substantial
justice.

 Because John has not negated all bases of jurisdiction, see Moki Mac, 221
S.W.3d at 574, we conclude that the trial court properly denied his special
appearance. We overrule the second issue as to John.

IV. Conclusion

 In conclusion, we reverse the trial court's denial of the special appearance as
to Sylvia Corella and Tracy A. Weir and render judgment dismissing the case against
them for lack of personal jurisdiction. We affirm the trial court's denial of the special
appearance as to John Chavez Corella, Jr.

 

 NELDA V. RODRIGUEZ

 Justice


Memorandum Opinion delivered and 

filed this 14th day of February, 2008.
1. We note that appellees' petition also included the following allegation regarding appellants in
their representative capacity: "John Corella, Sylvia Corella and Tracy Weir serving as Corella Telecom,
L. L. C. (CTL) officers were the stewards over the investment in the Texas asset."
2. In Tuscano v. Osterberg, the court explained that: 

 

 [g]enerally, corporate agents and employees are not subject to personal jurisdiction in
Texas merely because their employer does business in this state. Sometimes referred
to as 'the fiduciary shield doctrine,' this principle protects a corporate officer or
employee from personal jurisdiction when all the individual's contacts in Texas were on
behalf of an employer. 


Tuscano v. Osterberg, 82 S.W.3d 457, 466-67 (Tex. App.-El Paso 2002, no writ). In Tang v. Garcia, we
explained that "[t]he doctrine shields a nonresident defendant from suit in a forum state when his or her
only contacts with that state are in a representative capacity." No. 13-06-00367-CV, 2007 Tex. App.
LEXIS 6148, at *12 (Tex. App.--Corpus Christi Aug. 2, 2007, pet. denied) (mem. op.) (citing Cadle v.
Graubart, 990 S.W.2d 469, 473 (Tex. App.-Beaumont 1999, no pet.)); see Siskind v. Villa Found. for
Educ., Inc., 642 S.W.2d 434, 437-38 (Tex. 1982) (speaking in terms of "alter ego").
3. Number six was omitted from the trial court's findings of fact.
4. The Texas long-arm statute, section 17.042, provides as follows:


 In addition to other acts that may constitute doing business, a nonresident does
business in this state if the nonresident:

 

 (1) contracts by mail or otherwise with a Texas resident and either party is to
perform the contract in whole or in part in this state;

 

 (2) commits a tort in whole or in part in this state; or

 

 (3) recruits Texas residents, directly or through an intermediary located in this
state, for employment inside or outside this state.


Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (Vernon 1997).
5. Having so concluded, we need not address the portion of the trial court's conclusion that it had
specific jurisdiction over Sylvia and Tracy because plaintiffs' causes of action arose from or related to
those contacts. See Tex. R. App. P. 47.1.